JUSTICE TRIEWEILER
delivered the opinion of the Court.
Plaintiffs Paul and Pamela Casarotto filed this suit in the District Court for the Eighth Judicial District in Cascade County to recover damages which they claim were caused by the defendants’ breach of contract and tortious conduct. Defendants Nick Lombardi and Doctor’s Associates, Inc., (DAI) moved the District Court for an order dismissing plaintiffs’complaint, or in the alternative, staying further judicial proceedings pending arbitration of plaintiffs’ claims pursuant to a provision in DATs franchise agreement with plaintiffs which required that disputes “arising out of or relating to” that contract be settled by arbitration. The District Court granted defendants’ motion, and ordered that further judicial proceedings be stayed until arbitration proceedings were completed in accordance with the terms of the parties’ agreement. Plaintiffs appealed from that order, and on December 15, 1994, we reversed the order of the District Court and remanded this case to that court for further proceedings. Casarotto v. Lombardi (1994), 268 Mont. 369, 886 P.2d 931. Following this Court’s decision, the defendants petitioned the Supreme Court of the United States for a writ of certiorari. That petition was granted, and on June 12, 1995, the United States Supreme Court ordered that the December 15, 1994, judgment of this Court be vacated, and remanded this case to the Supreme Court of Montana for further consideration in light of that Court’s decision in Allied-Bruce Terminix Cos. v. Dobson (1995), 513 U.S._, 115 S. Ct. 834, 130 L. Ed. 2d 753. Having *5 further considered our prior decision in light of Dobson, we now reaffirm and reinstate our prior opinion.

FACTUAL BACKGROUND

Paul and Pamela Casarotto entered into a franchise agreement with DAI which allowed them to open a Subway Sandwich Shop in Great Falls, Montana. DAI’s franchise agreement included on page nine a provision which required that controversies or claims related to the contract shall be settled by arbitration in Bridgeport, Connecticut. However, the franchise agreement did not include notice on the front page to the effect that the contract was subject to arbitration, as required by § 27-5-114(4), MCA.
The Casarottos filed this action in the District Court based on their allegations that DAI breached its agreement with them, defrauded them, and engaged in other tortious conduct, all of which resulted in loss of business and the resulting damage.
DAI moved to dismiss the Casarottos’ claim or to stay further judicial proceedings pending arbitration pursuant to the arbitration provision in its franchise agreement. The District Court granted DATs motion to stay further judicial proceedings pursuant to 9 U.S. C. § 3, which is part of the Federal Arbitration Act found at 9 U.S.C. §§ 1-15 (1988).
On appeal from the District Court’s order, we considered whether Montana’s notice requirement was preempted by the Federal Arbitration Act in light of the U.S. Supreme Court’s recent decision in Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University (1989), 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488. In that case, the Supreme Court stated that:
The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law — that is, to the extent that it “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed.2d 581 (1941). The question before us, therefore, is whether application of Cal.Civ.Proc. Code Ann. § 1281.2(c) to stay arbitration under this contract in interstate commerce, in accordance with the terms of the arbitration agreement itself, would undermine the goals and policies of the FAA. We conclude that it would not.
*6 Volt, 489 U.S. at 477-78, 109 S. Ct. at 1255 (citation omitted; emphasis added).
Based on the cited language from Volt, we concluded that the nature of our inquiry was whether Montana’s notice requirement found at § 27-5-114(4), MCA, would “undermine the goals and policies of the FAA.” We concluded that it does not. Casarotto, 886 P.2d at 931. We explained our conclusion as follows:
Our conclusion that Montana’s notice requirement does not undermine the policies of the FAA is based on the Supreme Court’s conclusion that it was never Congress’s intent when it enacted the FAA to preempt the entire field of arbitration, and its further conclusion that the FAA does not require parties to arbitrate when they have not agreed to do so. That Court held that the purpose of the FAA is simply to enforce arbitration agreements into which parties had entered, and acknowledged that the interpretation of contracts is ordinarily a question of state law. Volt, 489 U.S. at 474, 109 S.Ct. at 1253.
Presumably, therefore, the Supreme Court would not find it a threat to the policies of the Federal Arbitration Act for a state to require that before arbitration agreements are enforceable, they be entered knowingly. To hold otherwise would be to infer that arbitration is so onerous as a means of dispute resolution that it can only be foisted upon the uninformed. That would be inconsistent with the conclusion that the parties to the contract are free to decide how their disputes should be resolved.
Montana’s notice requirement does not preclude parties from knowingly entering into arbitration agreements, nor do our courts decline to enforce arbitration agreements which are entered into knowingly.
Therefore, we conclude that Montana’s notice statute found at § 27-5-114(4), MCA, would not undermine the goals and policies of the FAA, and is not preempted by 9 U.S.C. § 2 (1988).
Casarotto, 886 P.2d at 938-39.
On January 18, 1995, subsequent to our decision in this case, the U.S. Supreme Court decided Dobson. On June 12, 1995, the same Court vacated our prior Casarotto decision and remanded the matter to this Court for further consideration in light of the Dobson decision.
In Dobson, the plaintiffs were the assignees of a contract with Terminix for life-time protection against termites. They sued Terminix in Alabama state court when they found their house “swarming *7 with termites.” Terminix moved the court for a stay pursuant to § 2 of the Federal Arbitration Act (9 U.S.C. § 2 (1988)) so that arbitration could proceed pursuant to a provision for arbitration in the termite protection plan. The stay was denied. The Supreme Court of Alabama upheld the denial on the basis of Ala. Code § 8-1-41(3) (1993), which made written, predispute arbitration agreements invalid and unenforceable. The Alabama court concluded that its state statute was not preempted by the Federal Arbitration Act because the connection between the termite contract and interstate commerce was too slight.
In the court’s view, the Act applies to a contract only if “ ‘at the time [the parties entered into the contract] and accepted the arbitration clause, they contemplated substantial interstate activity.’ ” Despite some interstate activities (e.g., Allied-Bruce, like Tbrminix, is a multistate firm and shipped treatment and repair material from out of state), the court found that the parties “contemplated” a transaction that was primarily local and not “substantially” interstate.
Dobson, 513 U.S. at_, 115 S. Ct. at 837 (citations omitted).
Before addressing the issue presented, the Dobson majority reiterated its conclusion that the purpose of the Federal Arbitration Act was to “overcome judicial hostility to arbitration agreements and that applies in both federal and state courts.” Dobson, 115 S. Ct. at 835. The Court then went on to conclude that the language in § 2 of the Act which applied its provisions to any “contract evidencing a transaction involving commerce” had broader significance than the words of art “in commerce,” and therefore, covered more than persons or activities “within the flow” of interstate commerce. Dobson, 115 S. Ct. at 839. The Court held that the word “involving,” like “affecting,” signaled an intent on the part of Congress “to exercise Congress’s commerce power to the full,” Dobson, 115 S. Ct. at 841, and secondly that the Act’s preemptive force applies to transactions which, in fact, involve interstate commerce, even though a connection to interstate commerce may not have been contemplated by the parties at the time they entered into the agreement. For these reasons, the judgment of the Supreme Court of Alabama was reversed. Dobson, 115 S. Ct. at 843.
After careful review, we can find nothing in the Dobson decision which relates to the issues presented to this Court in this case. Our prior Casarotto decision did not involve state law which made arbitration agreements invalid and unenforceable. Our state law simply requires that the parties be adequately informed of what they are doing before they enter into an arbitration agreement. Our decision did not involve an analysis of what was meant by “involving com *8 merce” or “affecting commerce” or “in commerce.” We assumed, in the Casarotto decision, that the transaction with which we were concerned involved interstate commerce, and that any state law which frustrated the purposes of the Federal Arbitration Act would be preempted.
Finally, there is no suggestion in the Dobson decision that the principles from Volt on which we relied have been modified in any way. To our knowledge, it is still the law, therefore, that state law is only preempted to the extent that it “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Volt, 489 U.S. at 477, 109 S. Ct. at 1255 (citing Hines v. Davidowitz (1941), 312 U.S. 52, 67, 61 S. Ct. 399, 404, 85 L. Ed. 2d 581).
While the Dobson decision does include a discussion extolling the virtues of arbitration as a “less expensive alternative to litigation,” Dobson, 513 U.S. at_, 115 S. Ct. at 843 (apparently based on input from the American Arbitration Association), and while that conclusion is at odds with facts set forth in Justice Trieweiler’s concurring opinion to our earlier decision, the concurring opinion was not the basis for our decision.
For these reasons, we conclude, after thorough review of our earlier decision in light of the U.S. Supreme Court’s decision in Dobson, that the decisions are not inconsistent, and therefore, that there is no basis for modifying or reversing our earlier opinion. We reaffirm and reinstate our opinion dated December 15, 1994, in the above matter, and remand this case to the District Court for further proceedings consistent with this opinion.
JUSTICES NELSON, HUNT and LEAPHART concur.