669 So.2d 893 (1995)
The TERMINIX INTERNATIONAL COMPANY LIMITED PARTNERSHIP and Allied-Bruce-Terminix Companies, Inc., a corporation
v.
Mark JACKSON and Laurie Jackson.
1911842.
Supreme Court of Alabama.
November 3, 1995.
*894 Robert E. Sasser and Dorothy Wells Littleton of Sasser & Littleton, P.C., Montgomery, for Appellants.
Ronald W. Wise of Manasco & Wise, Montgomery, for Appellees.

On Remand from the Supreme Court of the United States
ALMON, Justice.
The United States Supreme Court has vacated our original judgment, which was based on our opinion of August 13, 1993, and has remanded this case for further consideration in light of Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. ___, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). See Terminix Int'l Co. Ltd. Partnership v. Jackson, 513 U.S. ___, 115 S.Ct. 930, 130 L.Ed.2d 876 (1995).
The original opinion of this Court is published at 628 So.2d 357. The essential facts of the case are set out in that opinion, as follows:
"The defendants, Terminix International Company Limited Partnership ... and Allied Bruce Terminix Companies [hereinafter collectively `Terminix'] ..., appeal from the trial court's order denying their motion to compel the plaintiffs, Mark and Laurie Jackson, to arbitrate the claims stated in certain counts in an action filed by the Jacksons. A single issue is presented: whether the contract between the partiesa termite bondcontains sufficient contacts with interstate commerce to bring it within the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

"In March 1988, Mark and Laurie Jackson agreed to purchase a house in Montgomery, Alabama, from Tommy Geohagan. At the closing, Geohagan showed the Jacksons a Veterans' Administration ... form that had been prepared by Terminix Service. This form indicated that Terminix Service had inspected the house and had observed existing termite damage; a graph attached to the form specifically described the nature and extent of the damage. At the same time, Geohagan assigned to the Jacksons his rights in a termite bond that he had previously acquired from Terminix Service and Terminix International.* This bond contained a clause providing that any dispute arising out of or relating to the bond would be settled by arbitration.
"The Jacksons later discovered substantial termite damage to their house. They brought an action against Terminix Service and Terminix International, alleging that the defendants had defrauded them by misrepresenting the nature of the termite damage referenced on the V.A. form; the complaint also included a breach of contract count. Terminix Service and Terminix International subsequently moved to compel the Jacksons to arbitrate the breach of contract claim pursuant to the arbitration clause in the termite bond. The trial court denied the motion, and Terminix International and Terminix Service appeal from that order.
"* Terminix Service was responsible for rendering the services on the bond; Terminix International was the guarantor on the bond."
628 So.2d at 358.
This Court held that the Federal Arbitration Act was inapplicable, because, it held, *895 the connection between the termite bond and interstate commerce was too slight, in that the parties had not contemplated substantial interstate activity when they entered into the contract. 628 So.2d at 359. Thus, we affirmed the denial of the motion to compel arbitration of the Jacksons' contract claim and to stay litigation of other claims pending arbitration; our affirmance was based on § 8-1-41(3), Ala.Code 1975, which prohibits specific enforcement of "[a]n agreement to submit a controversy to arbitration."
The Supreme Court held in Allied-Bruce Terminix that the language of the Federal Arbitration Act making enforceable an arbitration provision in "a contract evidencing a transaction involving commerce" is applicable "to the limits of Congress' Commerce Clause power," and that, because the transaction in that case, in fact, involved interstate commerce, the Federal Arbitration Act was applicable and preempted state law. 513 U.S. at ___, 115 S.Ct. at 837; 9 U.S.C. § 2.
After the United States Supreme Court vacated this Court's judgment and remanded the cause, the Jacksons asked this Court to allow rebriefing concerning the effect the Supreme Court's ruling in Allied-Bruce Terminix might have on this Court's original decision. The Jacksons proposed to present the arguments that there was no evidence of interstate commerce presented in this case and that Terminix had waived any right to proceed under the arbitration clause in the termite bond. However, rebriefing is unnecessary, because the issues presented on remand were adequately addressed by the parties in their original briefs submitted to this Court. The cause has therefore been submitted on the order of remand and on the original briefs.
The Jacksons' complaint alleged, in count one, that Terminix fraudulently misrepresented and suppressed material facts in the termite letter and the accompanying inspection graph; in count two, that Terminix negligently failed to properly inspect the house before the sale; in count three, that Terminix breached the termite bond by failing to repair the Jacksons' home in accordance with the terms of the termite bond; and, in count four, that Terminix's fraudulent misrepresentations induced them to purchase the termite bond. We note, as a reiteration of the facts set out in our original opinion, that Terminix's motion to the circuit court was to compel arbitration of the Jacksons' breach of contract claim pursuant to the terms of the termite bond and pursuant to the Federal Arbitration Act, and to "stay litigation of all other claims ... pending conclusion of the arbitration proceedings." Terminix argued that resolution of the breach of contract claim by arbitration could either "dispose of the Plaintiffs' alternative fraud claim" or "narrow the issues to be tried" by the circuit court. Thus, there has been no argument that the Jacksons' tort claims arising from Terminix's inspection and its issuance of the termite letter are within the scope of the termite bond's arbitration clause. Cf. Allied-Bruce Terminix Cos. v. Dobson, [Ms. 1920473, November 3, 1995] ___ So.2d ___ (Ala.1995) (decision on remand from the Supreme Court of the United States) (holding that tort claims similar to those stated by the Jacksons were not within the scope of an identical arbitration clause, but that the contract claims were within the scope of the clause).
Initially, we note that this contract "involv[es] commerce," as that statutory term was interpreted by the United States Supreme Court in Allied-Bruce Terminix. 9 U.S.C. § 2. Despite the Jacksons' assertion to the contrary, there was evidence that the termite bond involved interstate commerce. The original opinion of this Court stated:
"Terminix International and Terminix Service argue that the termite bond does have at least a slight nexus with interstate commerce, for the following reasons: Terminix International has no office in Alabama, but is a Delaware limited partnership with its principal office in Memphis, Tennessee; Terminix Service is an Arkansas corporation; and the bond, because it obligates both companies to retreat the home and repair any damage that results from the infestation of termites, contemplates that at least some of the products used to perform these services will be obtained from out-of-state sources." *896 628 So.2d at 359. These connections to interstate commerce are substantially similar to those presented by the contract in Allied-Bruce Terminix, wherein the Supreme Court found that the transaction, in fact, involved interstate commerce. 513 U.S. at ___, 115 S.Ct. at 843. Therefore, the Federal Arbitration Act is applicable to the arbitration clause contained in the termite bond in this case, and the clause is specifically enforceable, unless Terminix has waived the right to proceed under the clause. 9 U.S.C. § 2.
In cases before this Court to which the Federal Arbitration Act is applicable, the federal substantive law of arbitrability is to be applied. Ex parte Warrior Basin Gas Co., 512 So.2d 1364 (Ala.1987) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Because there is a strong federal policy favoring arbitration, Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), "the burden on one seeking to prove waiver is a heavy one." Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1, 2 (Ala.1986) (quoting American Dairy Queen Corp. v. Tantillo, 536 F.Supp. 718 (M.D.La.1982)). To establish waiver, the Jacksons must show that Terminix substantially participated in the litigation process and that, as a result, the Jacksons would be prejudiced if Terminix were now allowed to invoke the arbitration process. Ex parte McKinney, 515 So.2d 693 (Ala.1987); Ex parte Merrill Lynch, supra; Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala.1986). Factors tending to show prejudice may include the length of the party's delay in demanding arbitration and the expense incurred by the other party by participating in the litigation. S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507 (11th Cir.1990).
The Jacksons alleged in their response to Terminix's motion to compel arbitration and to stay litigation that Terminix had waived any right to seek arbitration, by participating in the litigation and thereby prejudicing the Jacksons. The Jacksons noted that Terminix did not move to compel arbitration until seven months after the action was brought; that Terminix filed requests for admissions, interrogatories, and requests for production of documents; that Terminix had taken two depositions, totaling over 100 pages; that the Jacksons had taken three depositions, totaling over 300 pages; and that the Jacksons had spent over $900.00 for deposition expenses.
We conclude that the Jacksons have not met the burden required to establish waiver. This Court has stated that "[t]he joining of issue on the merits, assertion of a counterclaim or cross-claim, or engaging in discovery, alone, is not sufficient to create a waiver." Ex parte Costa & Head, 486 So.2d at 1277 (citing Demsey & Associates, Inc. v. S.S. Sea Star, 461 F.2d 1009 (2d Cir.1968); Gavlik Constr. Co. v. H.F. Campbell Co., 526 F.2d 777 (3d Cir.1975)). This Court has also examined the extent and nature of discovery conducted by a party, in determining whether the other party was prejudiced by a delay in asserting the right to arbitration. See Ex parte McKinney, supra. Terminix points out that the discovery conducted by the parties in this case, including Terminix's depositions of the Jacksons and the Jacksons' depositions of certain Terminix agents, would be necessary to adjudicate the nonarbitrable claims. Terminix also points out that the Jacksons were placed on notice of Terminix's arbitration rights by Terminix's answer to the Jacksons' complaint, which answer pleads several defenses arising from the express language of the termite bond, including the arbitration clause. Thus, the discovery expenses incurred by the Jacksons are not, now, wasted by Terminix's assertion of the right to arbitrate, and Terminix has not acted in a manner evincing "an intent to abandon the right to seek arbitration." Ex parte Merrill Lynch, 494 So.2d at 3.
Therefore, in light of the United States Supreme Court's holding in Allied-Bruce Terminix, supra, the circuit court must grant Terminix's motion to compel arbitration of the Jacksons' breach of contract claim.
Although Terminix's motion sought to compel arbitration only of the contract claim, not the fraud and negligence claims, the motion *897 did seek a stay of litigation of those claims pending arbitration of the contract claim. The circuit court, in denying the motion to compel arbitration of the contract claim, naturally did not reach the motion to stay the other claims. Now that the decision of the United States Supreme Court in Allied-Bruce Terminix requires a grant of the motion to compel arbitration of the contract claim, the question arises whether the motion to stay the other claims should be granted. Upon a review of the authorities, we have determined that the question of a stay of non-arbitrable claims pending arbitration of related claims is one for the discretion of the trial court.
The United States Supreme Court has not directly addressed the question of a stay in circumstances similar to these, but in two cases pertaining to arbitration that Court has addressed the propriety of stays. In Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the district court had granted a stay of the proceedings in the federal court by which the construction company sought to compel arbitration under § 4 of the Federal Arbitration Act, pending resolution in state court of a declaratory judgment action filed by the hospital, which sought a declaration that no arbitration was due, principally because of the contractor's alleged untimeliness in demanding arbitration. Thus, rather than involving a question of a stay of litigation pending arbitration, Moses H. Cone Memorial Hospital involved competing federal and state actions on whether arbitration could be compelled. The Supreme Court affirmed the judgment of the court of appeals, which had held that the district court erred in staying the proceedings before it in deference to the state court proceedings.
Most pertinent in Moses H. Cone Memorial Hospital to the question before us is footnote 23 and the text accompanying it. The hospital argued that, because its dispute with the architect was not arbitrable, "the danger of piecemeal litigation" supported a stay of the federal proceeding. 460 U.S. at 19, 103 S.Ct. at 939. The Court, in rejecting this argument, acknowledged that the dispute with the architect could not be arbitrated, but stated:
"It is true, therefore, that if Mercury obtains an arbitration order for its dispute, the Hospital will be forced to resolve these related disputes in different forums. That misfortune, however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law requires [emphasis in original] piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.23
"23 ... In some cases, of course, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket. See generally Landis v. North American Co., 299 U.S. 248, 254-255, 57 S.Ct. 163, 165-166, 81 L.Ed. 153 (1936)."
460 U.S. at 20, 103 S.Ct. at 939 (emphasis added; footnote 22 omitted). See also Summer Rain v. Donning Company/Publishers, Inc., 964 F.2d 1455 (4th Cir.1992).
In Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the district court had denied a motion to compel arbitration of pendent state law claims pending litigation of federal securities law claims that the parties assumed were not subject to arbitration. The Supreme Court reversed the affirmance by the court of appeals, holding that
"the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."
470 U.S. at 217, 105 S.Ct. at 1241. Thus, the Court in Dean Witter, as in Moses H. Cone Memorial Hospital, clearly contemplated contemporaneous arbitration of some claims and litigation of other related ones. Justice White's special concurrence is explicit on this point:

*898 "In addition, once it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed. While the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, it seems to me that the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course."
470 U.S. at 225, 105 S.Ct. at 1245. Although the facts in Dean Witter concerned a stay of arbitration pending litigation of federal claims, the converse situation of a request for a stay of litigation pending arbitration of other claims should be subject to the same "heavy presumption" that "the arbitration and the lawsuit will each proceed in its normal course."
The Supreme Court in Dean Witter questioned whether an arbitration award would have any effect on litigation of related matters:
"[I]t is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims. Just last Term, we held that neither the full-faith-and-credit provision of 28 U.S.C. § 1738, nor a judicially fashioned rule of preclusion, permits a federal court to accord res judicata or collateral-estoppel effect to an unappealed arbitration award in a case brought under 42 U.S.C. § 1983. McDonald v. West Branch, 466 U.S. 284 [104 S.Ct. 1799, 80 L.Ed.2d 302] (1984). The full-faith-and-credit statute requires that federal courts give the same preclusive effect to a State's judicial proceedings as would the courts of the State rendering the judgment, and since arbitration is not a judicial proceeding, we held that the statute does not apply to arbitration awards. Id., at 287-288, 104 S.Ct. at 1801-1802."
470 U.S. at 222, 105 S.Ct. at 1243 (emphasis in original). Indeed, a major point in the Court's reasoning to the conclusion that the arbitration of the state claims should not be stayed was that the arbitration would not affect the federal litigation through the doctrines of res judicata or collateral estoppel. Thus, there seems to be no reason to prefer one forum over the other for the sake of establishing facts pertinent to all claims.
In Chang v. Lin, 824 F.2d 219 (2d Cir. 1987), a case that is procedurally analogous to the case before us, the United States Court of Appeals for the Second Circuit strongly disapproved of the notion that litigation of non-arbitrable claims should be stayed pending arbitration of related claims:
"A plaintiff has the right to litigate a '33 Act claim in a federal court notwithstanding any arbitration agreement with the defendant. See Wilko.[[1]] This right is substantially diminished if such claims must [lie] dormant until other claims arising out of the same series of events have been arbitrated. Evidence supporting the federal claims may become stale or unavailable prior to the conclusion of the arbitration. Moreover, delay generally works to the advantage of defendants who may well be inclined to prolong the arbitration unnecessarily in the hope that plaintiffs ultimately will be forced to abandon their nonarbitrable claims. If nonarbitrable federal claims are stayed pending the arbitration of other federal or state claims, plaintiffs alleging fraud in securities transactions face the unhappy choice of either forgoing arbitrable claims in order to obtain prompt consideration of the other claims or waiting months, if not years, before their nonarbitrable claims will be heard by a federal court."
824 F.2d at 222.
To the Second Circuit's concerns we would add our concern that a stay of litigation of nonarbitrable claims pending arbitration of other claims might well violate the guarantee in § 11 of the Alabama Constitution of 1901 that "the right of trial by jury shall remain inviolate." If such a violation of our constitution *899 were required by the Supremacy Clause of the United States Constitution, then an Alabama court would be duty-bound to order such a stay. On the contrary, however, our reading of the pertinent federal cases leads us to conclude that federal law does not require a stay of nonarbitrable claims, but leaves the question whether to grant such a stay to the trial court, state or federal, "as a matter of its discretion to control its docket." Moses H. Cone Memorial Hospital, 460 U.S. at 20, fn. 23, 103 S.Ct. at 939, fn. 23.
For the foregoing reasons, the denial of the motion to compel arbitration of the contract claim is reversed, and the cause is remanded for the circuit court to consider whether, in its discretion, to grant or to deny the motion to stay litigation of the fraud and negligence claims.
REVERSED AND REMANDED.
SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
MADDOX and HOUSTON, JJ., concur in the result.
MADDOX, Justice (concurring in the result).
I concur only with the result, which is to remand the cause to the trial court. See my special concurrence in Allied-Bruce Terminix Cos. v. Dobson, [Ms. 1920473, Nov. 3, 1995] ___ So.2d ___ (Ala.1995).
NOTES
[1] In Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), the Court overruled Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which had held that certain claims under the Securities Act of 1933 were not subject to arbitration. Thus, although the particular claim at issue in Chang would now be arbitrable, the Second Circuit's reasoning is still pertinent to other situations where both arbitrable and nonarbitrable claims arise from a related set of circumstances.