# DOCTOR'S ASSOCIATES, INC., ET AL. *v.* CASAROTTO ET UX.

No. 95–559.   Argued April 16, 1996—Decided May 20, 1996

GINSBURG, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, SCALIA, KENNEDY, SOUTER, and BREYER, JJ., joined. THOMAS, J., filed a dissenting opinion, *post*, p. 689.

*Mark R. Kravitz* argued the cause for petitioners. With him on the briefs were *Jeffrey R. Babbin* and *H. Bartow Farr III.*

*Lucinda A. Sikes* argued the cause for respondents. With her on the brief were *David C. Vladeck, Paul Alan Levy,* and *William C. Watt.**

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns a standard form franchise agreement for the operation of a Subway sandwich shop in Montana.

---

*Briefs of *amici curiae* urging reversal were filed for the American Council of Life Insurance by *Patricia A. Dunn, Stephen J. Goodman,* and *Phillip E. Stano;* for the International Franchise Association et al. by *William J. Fitzpatrick* and *John F. Verhey;* and for Kaiser Foundation Health Plan, Inc., by *Kennedy P. Richardson.*

*Deborah M. Zuckerman, Steven S. Zaleznick,* and *Patricia Sturdevant* filed a brief for the American Association of Retired Persons et al. as *amici curiae* urging affirmance.

When a dispute arose between parties to the agreement, franchisee Paul Casarotto sued franchisor Doctor's Associates, Inc. (DAI), and DAI's Montana development agent, Nick Lombardi, in a Montana state court. DAI and Lombardi sought to stop the litigation pending arbitration pursuant to the arbitration clause set out on page nine of the franchise agreement.

The Federal Arbitration Act (FAA or Act) declares written provisions for arbitration "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. Montana law, however, declares an arbitration clause unenforceable unless "[n]otice that [the] contract is subject to arbitration" is "typed in underlined capital letters on the first page of the contract." Mont. Code Ann. § 27–5–114(4) (1995). The question here presented is whether Montana's law is compatible with the federal Act. We hold that Montana's first-page notice requirement, which governs not "any contract," but specifically and solely contracts "subject to arbitration," conflicts with the FAA and is therefore displaced by the federal measure.

I

Petitioner DAI is the national franchisor of Subway sandwich shops. In April 1988, DAI entered a franchise agreement with respondent Paul Casarotto, which permitted Casarotto to open a Subway shop in Great Falls, Montana. The franchise agreement stated, on page nine and in ordinary type: "Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration . . . ." App. 75.

In October 1992, Casarotto sued DAI and its agent, Nick Lombardi, in Montana state court, alleging state-law contract and tort claims relating to the franchise agreement. DAI demanded arbitration of those claims, and successfully moved in the Montana trial court to stay the lawsuit pending arbitration. *Id.*, at 10–11.

The Montana Supreme Court reversed. *Casarotto* v. *Lombardi*, 268 Mont. 369, 886 P. 2d 931 (1994). That court left undisturbed the trial court's findings that the franchise agreement fell within the scope of the FAA and covered the claims Casarotto stated against DAI and Lombardi. The Montana Supreme Court held, however, that Mont. Code Ann. § 27–5–114(4) rendered the agreement's arbitration clause unenforceable. The Montana statute provides:

> "Notice that a contract is subject to arbitration . . . shall be typed in underlined capital letters on the first page of the contract; and unless such notice is displayed thereon, the contract may not be subject to arbitration."

Notice of the arbitration clause in the franchise agreement did not appear on the first page of the contract. Nor was anything relating to the clause typed in underlined capital letters. Because the State's statutory notice requirement had not been met, the Montana Supreme Court declared the parties' dispute "not subject to arbitration." 268 Mont., at 382, 886 P. 2d, at 939.

DAI and Lombardi unsuccessfully argued before the Montana Supreme Court that § 27–5–114(4) was preempted by § 2 of the FAA.[1] DAI and Lombardi dominantly relied on our decisions in *Southland Corp.* v. *Keating,* 465 U. S. 1 (1984), and *Perry* v. *Thomas,* 482 U. S. 483 (1987). In *Southland,* we held that § 2 of the FAA applies in state as well as federal courts, see 465 U. S., at 12, and "withdr[aws] the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration," *id.,* at 10. We noted in the pathmarking *South-*

---

[1] Section 2 provides, in relevant part:

"A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2.

*land* decision that the FAA established a "broad principle of enforceability," *id.*, at 11, and that § 2 of the federal Act provided for revocation of arbitration agreements only upon "grounds as exist at law or in equity for the revocation of any contract." In *Perry*, we reiterated: "[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the text of § 2]." 482 U. S., at 493, n. 9.

The Montana Supreme Court, however, read our decision in *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468 (1989), as limiting the preemptive force of § 2 and correspondingly qualifying *Southland* and *Perry.* 268 Mont., at 378–381, 886 P. 2d, at 937–939. As the Montana Supreme Court comprehended *Volt*, the proper inquiry here should focus not on the bare words of § 2, but on this question: Would the application of Montana's notice requirement, contained in § 27–5–114(4), "undermine the goals and policies of the FAA." 268 Mont., at 381, 886 P. 2d, at 938 (internal quotation marks omitted). Section 27–5–114(4), in the Montana court's judgment, did not undermine the goals and policies of the FAA, for the notice requirement did not preclude arbitration agreements altogether; it simply prescribed "that before arbitration agreements are enforceable, they be entered knowingly." *Id.*, at 381, 886 P. 2d, at 939.

DAI and Lombardi petitioned for certiorari. Last Term, we granted their petition, vacated the judgment of the Montana Supreme Court, and remanded for further consideration in light of *Allied-Bruce Terminix Cos.* v. *Dobson,* 513 U. S. 265 (1995). See 515 U. S. 1129 (1995). In *Allied-Bruce*, we restated what our decisions in *Southland* and *Perry* had established:

"States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.' 9 U. S. C. §2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress's intent." 513 U. S., at 281.

On remand, without inviting or permitting further briefing or oral argument,[2] the Montana Supreme Court adhered to its original ruling. The court stated: "After careful review, we can find nothing in the *[Allied-Bruce]* decision which relates to the issues presented to this Court in this case." *Casarotto* v. *Lombardi*, 274 Mont. 3, 7, 901 P. 2d 596, 598 (1995). Elaborating, the Montana court said it found "no suggestion in *[Allied-Bruce]* that the principles from *Volt* on which we relied [to uphold §27–5–114(4)] have been modified in any way." *Id.*, at 8, 901 P. 2d, at 598–599. We again granted certiorari, 516 U. S. 1036 (1996), and now reverse.

## II

Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U. S. C. §2 (emphasis added). Repeating our observation in *Perry*, the text of §2 declares that state law may be applied "*if* that law arose to govern issues

---

[2] Dissenting Justice Gray thought it "cavalier" of her colleagues to ignore the defendants' request for an "opportunity to brief the issues raised by the . . . remand and to present oral argument." *Casarotto* v. *Lombardi*, 274 Mont. 3, 9–10, 901 P. 2d 596, 599–600 (1995).

concerning the validity, revocability, and enforceability of contracts generally." 482 U. S., at 493, n. 9. Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. See *Allied-Bruce*, 513 U. S., at 281; *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477, 483–484 (1989); *Shearson/American Express Inc.* v. *McMahon*, 482 U. S. 220, 226 (1987).

Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. See *Allied-Bruce*, 513 U. S., at 281; *Perry*, 482 U. S., at 493, n. 9. By enacting § 2, we have several times said, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed "upon the same footing as other contracts." *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506, 511 (1974) (internal quotation marks omitted). Montana's § 27–5–114(4) directly conflicts with § 2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the Act. See 2 I. Macneil, R. Speidel, T. Stipanowich, & G. Shell, Federal Arbitration Law § 19.1.1, pp. 19:4–19:5 (1995) (under *Southland* and *Perry*, "state legislation requiring greater information or choice in the making of agreements to arbitrate than in other contracts is preempted").[3]

---

[3] At oral argument, counsel for Casarotto urged a broader view, under which § 27–5–114(4) might be regarded as harmless surplus. See Tr. of Oral Arg. 29–32. Montana could have invalidated the arbitration clause in the franchise agreement under general, informed consent principles, counsel suggested. She asked us to regard § 27–5–114(4) as but one illustration of a cross-the-board rule: Unexpected provisions in adhesion contracts must be conspicuous. See also Brief for Respondents 21–24. But the Montana Supreme Court announced no such sweeping rule. The court did not assert as a basis for its decision a generally applicable principle of "reasonable expectations" governing any standard form contract

The Montana Supreme Court misread our *Volt* decision and therefore reached a conclusion in this case at odds with our rulings. *Volt* involved an arbitration agreement that incorporated state procedural rules, one of which, on the facts of that case, called for arbitration to be stayed pending the resolution of a related judicial proceeding. The state rule examined in *Volt* determined only the efficient order of proceedings; it did not affect the enforceability of the arbitration agreement itself. We held that applying the state rule would not "undermine the goals and policies of the FAA," 489 U. S., at 478, because the very purpose of the Act was to "ensur[e] that private agreements to arbitrate are enforced according to their terms," *id.*, at 479.

Applying § 27–5–114(4) here, in contrast, would not enforce the arbitration clause in the contract between DAI and Casarotto; instead, Montana's first-page notice requirement would invalidate the clause. The "goals and policies" of the FAA, this Court's precedent indicates, are antithetical to threshold limitations placed specifically and solely on arbitration provisions. Section 2 "mandate[s] the enforcement of arbitration agreements," *Southland*, 465 U. S., at 10, "save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U. S. C. § 2. Section 27–5–114(4) of Montana's law places arbitration agreements in a class apart from "any contract," and singularly limits their validity. The State's prescription is thus inconsonant with, and is therefore preempted by, the federal law.

term. Cf. *Transamerica Ins. Co.* v. *Royle*, 202 Mont. 173, 180, 656 P. 2d 820, 824 (1983) (invalidating provision in auto insurance policy that did not "honor the reasonable expectations" of the insured). Montana's decision trains on and upholds a particular statute, one setting out a precise, arbitration-specific limitation. We review that disposition, and no other. It bears reiteration, however, that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot." *Perry* v. *Thomas*, 482 U. S. 483, 493, n. 9 (1987).

\*    \*    \*

For the reasons stated, the judgment of the Supreme Court of Montana is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, dissenting.

For the reasons given in my dissent last Term in *Allied-Bruce Terminix Cos.* v. *Dobson,* 513 U. S. 265 (1995), I remain of the view that §2 of the Federal Arbitration Act, 9 U. S. C. §2, does not apply to proceedings in state courts. Accordingly, I respectfully dissent.