723 So.2d 555 (1998)
TERMINIX INTERNATIONAL COMPANY, et al.
v.
Mark JACKSON and Laurie Jackson.
1961351.
Supreme Court of Alabama.
March 6, 1998.
Robert E. Sasser, Dorothy Wells Littleton, and Tamara A. Stidham of Sasser & Littleton, P.C., Montgomery, for appellants.
Ronald W. Wise and William M. Bowen, Jr., of Wise & Bowen, Montgomery, for appellee.
ALMON, Justice.
In Terminix International Co. Ltd. Partnership v. Jackson, 669 So.2d 893 (Ala.1995),[1] *556 this Court reversed the circuit court's denial of Terminix's motion to compel arbitration of the contract claim in the Jacksons' complaint and remanded the cause for further proceedings. When the case returned to the circuit court, Terminix filed a new motion to compel arbitration, this time seeking to compel arbitration of all four counts of the complaint rather than only Count III, the contract count. The circuit court denied the motion as to Count I, which alleges fraud and suppression that induced the Jacksons to purchase the house, and Count II, which alleges that the defendants negligently, wantonly, or willfully failed to properly inspect the house and inform the Jacksons of the true extent of the damage to the house. The court granted the motion as to Count III, alleging breach of the contract, or termite protection plan, and Count IV, fraudulent inducement to purchase the termite protection plan. Terminix appeals from the denial of the motion as to Counts I and II; the Jacksons have not sought a writ of mandamus to set aside the granting of the motion as to Counts III and IV.
In Terminix's original motion to compel arbitration, filed seven months after the complaint was filed, and after considerable discovery, Terminix sought arbitration only of the claim under the termite protection plan:
"Plaintiffs' claims against Defendants in this action are stated in the alternative. If the damage in Plaintiffs' home is old damage, they claim that Terminix Service is liable to them for failing to disclose the existence of the damage prior to their purchase of the home; in the alternative, Plaintiffs claim that if the damage in their home is new damage, Defendants have breached their duty to repair the damage, which duty arises from the language of the Termite Protection Plan subject of this motion. Resolution of the issue of whether the damage is new, thus triggering the duty to repair contained in the Termite Protection Plan, in accordance with the arbitration clause contained in the contract, may dispose of Plaintiffs' alternative fraud claim. Even if it does not dispose of the claim, it will narrow the issues to be tried by this Court."
Thus, in the initial proceedings before the circuit court, Terminix did not take the position that Counts I and II were arbitrable. We express no opinion on whether Count IV is arbitrable, because the Jacksons do not take issue with the circuit court's holding that it is. We also will not discuss Terminix's assumption that an arbitration of the contract claim would "narrow the issues to be tried by the Court" on the fraud and negligence claims, except to refer the reader to our discussion at 669 So.2d at 897-99.
One of the circuit court's initial bases for denying the motion to compel arbitration was its finding that Terminix had waived any right to seek specific performance of the arbitration clause by substantially invoking the litigation process:
"Further, the Court finds that even if the arbitration clause was enforceable as to that one cause of action with that one defendant, the defendants have waived any right to arbitration which they may have had. The Court makes this finding based upon the totality of the circumstances in that the defendants have acted inconsistently with the arbitration right and, as a result, have prejudiced the plaintiffs. The Complaint in this case was served in August, 1991, and the defendants did not file their Motion to Compel Arbitration and Stay Litigation until March 30, 1992, some seven months later. During this period of time the defendants filed Requests for Admissions, Interrogatories, [and] Request[s] for Production of Documents and took two depositions totaling over 100 pages. Further, the plaintiffs have taken three depositions consisting of over 300 pages. There is no question that the defendants have acted inconsistently with this arbitration right and the plaintiffs have incurred expenses by participating in the litigation process. S & H Contractors, Inc. v. A.J. *557 Taft Coal Co., 906 F.2d 1507 (11th Cir. 1990)."
In the initial appeal, this Court did not reach the question of waiver, because the Court affirmed the circuit court's primary holding that the contract did not involve interstate commerce. 628 So.2d at 359. However, Terminix argued that the circuit court's denial of the motion to compel arbitration should be reversed in spite of that court's finding of waiver, citing Ex parte McKinney, 515 So.2d 693 (Ala.1987), for the proposition that "a party does not waive its right to arbitrate by engaging in discovery that would have been necessary, in any event, on the nonarbitrable claims subject of the action." Appellant's brief in appeal no. 1911842, filed October 22, 1992, p. 8. Although the nonarbitrable claims referred to on page 9 of that brief were the claims against the individual defendants George Battle and George Massey, Terminix had at that time sought arbitration only of the contract claim against it, essentially conceding that the fraud and negligence claims against it were nonarbitrable.
Thus, when this case was remanded to this Court by the Supreme Court of the United States, we were presented with (1) a holding by that Court in Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), that a similar Terminix contract involved interstate commerce and that therefore the Federal Arbitration Act preempted Ala.Code 1975, § 8-1-41(3), as to claims based on the Terminix contract; (2) a finding by the circuit court, as an alternative basis for denying the motion to compel arbitration, that Terminix had waived any right to seek arbitration of the Jacksons' claims; and (3) argument by Terminix that it had not waived arbitration, because the discovery that had been conducted before it moved to compel arbitration was applicable to nonarbitrable claims in the Jacksons' complaint.
In this Court's November 3, 1995, opinion, we accepted Terminix's argument on this point in holding that it had not waived its right to seek arbitration of the contract claim:
"Terminix points out that the discovery conducted by the parties in this case, including Terminix's depositions of the Jacksons and the Jacksons' depositions of certain Terminix agents, would be necessary to adjudicate the nonarbitrable claims.... Thus, the discovery expenses incurred by the Jacksons are not, now, wasted by Terminix's assertion of the right to arbitrate, and Terminix has not acted in a manner evincing `an intent to abandon the right to seek arbitration.' Ex parte Merrill Lynch[, Pierce, Fenner & Smith, Inc., 494 So.2d 1, at 3 (Ala.1986) ].
"Therefore, in light of the United States Supreme Court's holding in Allied-Bruce Terminix, [513 U.S. 1123, 115 S.Ct. 930, 130 L.Ed.2d 876], the circuit court must grant Terminix's motion to compel arbitration of the Jacksons' breach of contract claim.

"Although Terminix's motion sought to compel arbitration only of the contract claim, not the fraud and negligence claims, the motion did seek a stay of litigation of those claims pending arbitration of the contract claim."
Terminix International, 669 So.2d at 896-97 (emphasis added).
Thus, this Court overturned the circuit court's finding of waiver, based principally upon Terminix's argument that the discovery that had been conducted was attributable to the claims that were not subject to arbitration. At that time, the only claim Terminix sought to arbitrate was the contract claim.
"[T]he doctrine of judicial estoppel `applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation.'"
Selma Foundry & Supply Co. v. Peoples Bank & Trust Co., 598 So.2d 844, 846 (Ala. 1992), quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir.), cert. denied, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). See also Bertrand v. Handley, 646 So.2d 16 (Ala.1994); Luna v. Dominion Bank of Middle Tennessee, Inc., 631 So.2d 917 (Ala.1993); Bracy v. *558 Scott, 589 So.2d 145 (Ala.1991); Russell v. Russell, 404 So.2d 662 (Ala.1981).
Because Terminix took the position that only the contract claim was subject to arbitration, and because this Court relied principally upon that position to overturn the circuit court's finding of a waiver, Terminix is judicially estopped from taking the position that all of the claims in the Jacksons' complaint are subject to arbitration.
Moreover, when this Court reversed as to the contract claim, it remanded simply for the circuit court to determine whether litigation of the other claims should be stayed pending arbitration of the contract claim:
"For the foregoing reasons, the denial of the motion to compel arbitration of the contract claim is reversed, and the cause is remanded for the circuit court to consider whether, in its discretion, to grant or to deny the motion to stay litigation of the fraud and negligence claims."
Terminix International, 669 So.2d at 899. "On remand, trial courts are required to follow the mandates of this Court or of any other appellate court." Ex parte United States Fid. & Guar. Co., 585 So.2d 922, 924 (Ala.1991), citing Kinney v. White, 215 Ala. 247, 110 So. 394 (1926). Indeed, if a trial court does not follow the mandate of an appellate court, mandamus will lie to compel such compliance. Ex parte Ufford, 642 So.2d 973 (Ala.1994); Ex parte Mobil Oil Corp., 613 So.2d 350 (Ala.1993); Ex parte U.S.F. & G., supra; Ex parte Bradley, 540 So.2d 711 (Ala.1989); Ex parte Alabama Power Co., 431 So.2d 151 (Ala.1983). Therefore, if the circuit court had granted Terminix's motion to compel specific performance of the arbitration clause as to Counts I and II (again, we express no opinion regarding Count IV, because the Jacksons do not contest the ruling regarding that count), it arguably would be subject to a writ of mandamus ordering it to deny that motion.
This Court did not expressly hold that Counts I and II were not subject to arbitration. No such holding was requested, or would have been appropriate, because Terminix had not asserted that they were subject to arbitration. However, the Court did suggest a comparison to Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995), adding the following parenthetical summary of the point on which it was comparable: "(holding that tort claims similar to those stated by the Jacksons were not within the scope of an identical arbitration clause, but that the contract claims were within the scope of the clause)." Terminix International, 669 So.2d at 895. Furthermore, the Court remanded for consideration of whether litigation of the fraud and negligence claims should be stayed pending arbitration of the contract claim; the circuit court held that they should not be. Thus, the circuit court followed both the reasoning and the mandate of this Court's order of remand.
Because the circuit court's denial of Terminix's motion to compel arbitration of Counts I and II was so clearly correct for the reasons stated above, we will not examine in detail the relationship, or lack thereof, of those fraud and negligence claims to the termite protection bond in which the arbitration clause appears. We do note that the termite protection bond provides certain remedies to the Jacksons if new termite infestations occur, whereas the allegations of Counts I and II pertain to an inspection of the house for the sake of issuing a "termite letter" to facilitate the Jacksons' purchase of the house. This is virtually the same situation that was presented in Allied-Bruce Terminix v. Dobson. Moreover, in this case, Terminix had conducted an earlier inspection that had disclosed the damage that was not disclosed in the letter issued in conjunction with the sale to the Jacksons. The Jacksons allege that Terminix fraudulently suppressed that information. As in Dobson, we do not see that the activities in regard to the termite letter give rise to claims "arising out of or relating to the interpretation, performance or breach of any provision of" the termite protection plan.
For the reasons stated, the order appealed from is affirmed.
AFFIRMED.
SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C. J., and MADDOX, HOUSTON, and SEE, JJ., dissent.
*559 MADDOX, Justice (dissenting).
This litigation has had a long and tortuous history. It began on August 20, 1991, when the plaintiffs, Mark and Laurie Jackson, sued the Terminix International Company Limited Partnership and Allied Bruce-Terminix Companies, Inc., d/b/a Terminix Service (collectively "Terminix"); George Massey; George Battle; and fictitiously named defendants. Both Massey and Battle are employed by Terminix.
The plaintiffs claimed compensatory and punitive damages for alleged fraud, misrepresentation, deceit, negligence, and breach of contract. On September 12, 1991, Terminix answered, asserting as a defense that "[a]ny controversy or claim between the purchaser of the `Termite Protection Plan' and the [d]efendants arising out of or relating to the interpretation, performance or breach of any provision of said contract which relates to new termite damage shall be settled exclusively by arbitration."
On March 30, 1992, Terminix filed a motion to compel arbitration and to stay the circuit court proceedings until arbitration was completed, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), and under the arbitration clause of the Termite Protection Plan. Following a hearing, the circuit court denied the motion, and Terminix appealed to this Court. On August 13, 1993, this Court issued an opinion affirming the order of the circuit court denying the motion to stay proceedings and to compel arbitration. This Court specifically held that the Termite Protection Plan at issue did not involve interstate commerce, because this Court did not believe there was evidence that the parties contemplated substantial interstate activity when they entered into the contract. Terminix Int'l Co. Ltd. Partnership v. Jackson, 628 So.2d 357, 359 (Ala. 1993).
While this case was pending in this Court, the Mobile County Circuit Court denied a motion to compel arbitration in a similar action involving Terminix; Terminix subsequently appealed that order to this Court. See Allied-Bruce Terminix Cos. v. Dobson, 628 So.2d 354 (Ala.1993). This Court in Dobson issued a similar opinion affirming the circuit court's order. Id. Terminix filed an application for rehearing, which this Court denied on September 24, 1993.
On December 22, 1993, Terminix petitioned the United States Supreme Court for a writ of certiorari in both cases. The Supreme Court granted both petitions, to review whether this Court had erred in determining that the "Termite Protection Plans" at issue were not contracts involving interstate commerce within the meaning of the FAA. The Court issued its ruling on January 18, 1995, holding that in enacting the FAA Congress had intended to exercise the full scope of its authority under the Commerce Clause of the United States Constitution and that the FAA applies to contracts, such as the Termite Protection Plan at issue in this case, that involve commerce in fact. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
Based on its holding in Dobson, the Supreme Court vacated this Court's decision in this case and remanded the cause to this Court for further consideration. Terminix Int'l Co. Ltd. Partnership v. Jackson, 513 U.S. 1123, 115 S.Ct. 930, 130 L.Ed.2d 876 (1995). On November 3, 1995, in accordance with the direction of the Supreme Court, this Court issued an opinion reversing the circuit court's order denying the motion to compel arbitration and remanding the case for the circuit court to reconsider the motion to compel arbitration and to stay litigation pending arbitration, in light of the Supreme Court's decision in Dobson. See Terminix Int'l Co. Ltd. Partnership v. Jackson, 669 So.2d 893 (Ala.1995).
On remand, Terminix filed in the circuit court a "Renewed Motion to Compel Arbitration." In addition, George Battle and George Massey filed a "Motion to Compel Arbitration," seeking arbitration of all of the plaintiffs' claims against them.
Each of the parties filed briefs in support of their positions, and on April 2, 1997, the circuit court entered an order granting all of the defendants' motions to compel arbitration with respect to the plaintiffs' claims of breach of contract and fraud in the inducement to enter into the Termite Protection Plan, but *560 the court found that the plaintiffs' negligence and fraud claims, to the extent that they related to the plaintiffs' purchase of their house, were not arbitrable. After the trial court refused to change its ruling, the defendants appealed.
The sole issue in this case is whether the arbitration agreement, which provides in part that "any controversy or claim between [the parties] arising out of or relating to the interpretation, performance or breach of any provision of this agreement shall be settled exclusively by arbitration," is broad enough to include the negligence and fraud claims that the plaintiffs have filed against the defendants. I believe that it is, and I believe that this Court's decision in this case shows its continuing hostility to the enforcement of arbitration provisions in contracts that involve interstate commerce, despite the fact that this case has already been considered by the Supreme Court and remanded once.
In Old Republic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala.1994), in a dissenting opinion, I detailed some of the history of this Court's hostility to arbitration and stated why I thought federal law required the arbitration of the common law tort claims in that case:
"The majority, applying what it describes as Alabama's strong public policy against arbitration, concludes that the subject agreement does not come within the terms of the FAA. My opinion of what constitutes a dispute arising out of an agreement involving interstate commerce, and, therefore, coming within the provisions of the FAA, has been stated in other cases. See, Ex parte Alabama Oxygen Co., 433 So.2d 1158 (Ala.1983) (Maddox, J., dissenting); this Court's judgment in that case was vacated by the United States Supreme Court and the cause was remanded to this Court, York International v. Alabama Oxygen Co., 465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984). See this Court's later opinion in Ex parte Alabama Oxygen Co., 452 So.2d 860 (Ala.1984) (on remand from the United States Supreme Court), adopting my dissent in the original proceeding (433 So.2d at 1168); and see Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala.1986), which I joined."
644 So.2d at 1263-4.
I pointed out in that dissenting opinion that "Congress passed the FAA in 1925 out of a desire to overcome the common-law judicial hostility toward arbitration" and that "[i]n Moses H. Cone Mem. Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983), the Supreme Court of the United States stated that § 2 of the FAA stands for `a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary' and `creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" Old Republic, 644 So.2d at 1264.
In that dissenting opinion, I further stated that I was "of the opinion that if the contract involved [was] one involving interstate commerce" and "contain[ed] an arbitration agreement voluntarily entered into by the parties," then the "federal policy favoring arbitration agreements" should be applied, "notwithstanding what the majority [referred] to as `our strong public policy against the use of predispute arbitration agreements.'" 644 So.2d at 1264. For an analysis of the Old Republic decision, see, Langford, Alabama Supreme Court Contravenes the Policy of the Federal Arbitration Act: Old Republic Insurance Co. v. Lanier, 47 Ala. L.Rev. 615 (1996).
The Supreme Court of the United States stated in Moses H. Cone Mem. Hospital, 460 U.S. at 24-25, 103 S.Ct. 927, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." The history of this case and of other cases shows that this Court does not apply federal law when interpreting agreements to arbitrate, but in fact interprets the law in such a manner as to frustrate the federal policy.
What has happened before, and what is happening in this case, reminds me of what happened in Doctor's Associates, Inc. v. Casarotto, *561 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), in which franchisees brought an action in a Montana state court against a franchisor and its agent regarding a dispute under a standard form franchise agreement. A district court stayed proceedings pending arbitration, and the franchisees appealed. The Montana Supreme Court, 268 Mont. 369, 886 P.2d 931, reversed, holding that the arbitration clause was unenforceable under a state statute, just as this Court held initially in this case. The United States Supreme Court, 515 U.S. 1129, 115 S.Ct. 2552, 132 L.Ed.2d 807 (1995), vacated the state court's judgment and remanded, just as it did in this present case. On remand, the Montana Supreme Court, 274 Mont. 3, 901 P.2d 596 (1995), reaffirmed its prior opinion, holding that the Montana statute was not preempted by the Federal Arbitration Act (FAA). The franchisors again sought review in the United States Supreme Court, and, in an opinion written by Justice Ginsburg, that Court held that the FAA preempted the Montana statute, which conditioned enforceability of an arbitration clause on compliance with Montana's first-page notice requirement, which governed not "any contract," but specifically and solely contracts "subject to arbitration."
The Court stated:
"In [Dobson], we restated what our decisions in [Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ] and [Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)] had established:
"`States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.... What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress's intent.' 513 U.S. at 281[, 115 S.Ct. 834].
"On remand, without inviting or permitting further briefing or oral argument, the Montana Supreme Court adhered to its original ruling. The court stated: `After careful review, we can find nothing in the [Dobson] decision which relates to the issues presented to this Court in this case.' Casarotto v. Lombardi, 274 Mont. 3, 7, 901 P.2d 596, 598 (1995). Elaborating, the Montana court said it found `no suggestion in [Dobson] that the principles from Volt on which we relied [to uphold § 27-5-114(4)] have been modified in any way.' Id. [274 Mont.] at 8, 901 P.2d at 598-599. We again granted certiorari, 516 U.S. 1036, 116 S.Ct. 690, 133 L.Ed.2d 594 (1996), and now reverse."
Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 684-86, 116 S.Ct. 1652, 1655-56 (1996) (footnote omitted).
Although in this case this Court does not affirm its prior decision without benefit of briefs or arguments, as the Montana Supreme Court did in Casarotto, the effect of what this Court now does is the same as the effect in Casarotto. That effect is, I believe, the frustration of the federal policy favoring arbitration.
Based on the foregoing, I cannot agree with the majority's interpretation of the language of the arbitration clauses or its conclusion regarding the issue of alleged waiver, and I cannot agree to deny the benefits of the FAA to defendants who assert an entitlement to those rights based on a broad arbitration clause in a contract that clearly involves interstate commerce. Consequently, I respectfully dissent.
HOOPER, C.J., and SEE, J., concur.
HOUSTON, Justice (dissenting).
I concur in the result Justice Maddox would reach in his dissent. I admit that I was one Justice who had a hostility to arbitration. This hostility was based upon the Constitution of Alabama of 1901, Article I, §§ 11 and 36, by which the right to trial by jury was to remain inviolate forever, being excepted out of the general powers of government *562 to alter. In keeping with these constitutional provisions, the Legislature duly enacted a law making an agreement to arbitrate unenforceable. Given our principles of law, this Court cannot declare an act of the Legislature unconstitutional unless it is clear beyond a reasonable doubt that the act violates the Constitution. White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala. 1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990). Clearly, the legislative act did not violate the Alabama Constitution. However, the Supremacy Clause of the Constitution of the United States allows the United States Supreme Court to trump the decisions of state supreme courts. I think the United States Supreme Court did that in Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Therefore, I defer to the ruling of that higher Court. I dissent.
NOTES
[1] Earlier decisions in this matter were reported at 628 So.2d 357 (Ala.1993), and 513 U.S. 1123, 115 S.Ct. 930, 130 L.Ed.2d 876 (1995). A similar, but independent, action involving the same or related Terminix defendants resulted in the opinions styled Allied-Bruce Terminix Cos. v. Dobson, 628 So.2d 354 (Ala.1993), reversed, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753, on remand, 684 So.2d 102 (Ala.1995). We shall refer in this opinion to the defendants Terminix International Company Limited Partnership and Allied-Bruce Terminix Companies, Inc., collectively as "Terminix," because there is no difference, for the purposes of this opinion, between the positions of the two entities.