EDSON TELES MACHADO & others[1] *vs.* SYSTEM4 LLC & another.[2]

Norfolk. December 4, 2012. - June 12, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Wage Act. Contract,* Arbitration. *Arbitration,* Waiver, Damages. *Public Policy. Federal Preemption. Practice, Civil,* Class action.

In a class action brought by plaintiffs who had entered into so-called "local franchise agreements" with the defendants for the provision of janitorial services to third-party customers, in which the plaintiffs alleged that the defendants had misclassified them and other similarly situated individuals as independent contractors and had committed other violations of the Massachusetts Wage Act, the judge erred in denying the defendants' motion to stay the court proceedings pending arbitration according to the terms of an arbitration clause contained in the agreements that prohibited class proceedings, where the plaintiffs were unable to demonstrate that they lacked the practical means to pursue their relatively substantial claims on an individual basis [513-517]; however, the arbitration clause's prohibition on multiple damages was unenforceable with respect to the plaintiffs' viable Wage Act claims, given that the award of treble damages is mandatory under the Wage Act and that such an award would not impinge on any fundamental characteristic of arbitration or frustrate the purpose of the arbitral forum [517-519].

CIVIL ACTION commenced in the Superior Court Department on March 24, 2010.

A motion to stay was heard by *Patrick F. Brady*, J., and a motion for reconsideration was considered by him.

A proceeding for interlocutory review was heard in the Appeals Court by *Andrew R. Grainger*, J., and the case was reported by him to the Appeals Court. The Supreme Judicial Court granted an application for direct appellate review.

*Eric H. Karp (Brigid Harrington* with him) for the defendants.

[1]Jocilene da Silva, Poliane Santos, Luiz Santos, Stenio Ferreira, and Glaucea de Oliveira Santos.

[2]NECCS, Inc., doing business as System4 of Boston, LLC (NECCS).

*Shannon Liss-Riordan* (*Claret Vargas & James W. Simpson, Jr.*, with her) for the plaintiffs.

The following submitted briefs for amici curiae:

*Audrey R. Richardson & Donald J. Siegel* for Massachusetts AFL-CIO & others.

*Victoria W. Ni, Leslie A. Bailey, & Spencer J. Wilson*, of California, *Scott L. Nelson & F. Paul Bland, Jr.*, of the District of Columbia, *& Matthew W.H. Wessler* for Public Justice, P.C., & another.

*Robin S. Conrad, Kate Comerford Todd, & Shane B. Kawka*, of the District of Columbia, *Alan E. Schoenfeld*, of New York, *& Mark C. Fleming* for Chamber of Commerce of the United States of America.

*Ben Robbins & Martin J. Newhouse* for New England Legal Foundation.

CORDY, J. The plaintiffs are individuals who have entered into contracts, called "local franchise agreements," with defendants System4 LLC (System4) and NECCS, Inc. (NECCS) (collectively, defendants), for the provision of commercial janitorial services to third-party customers.[3] The plaintiffs commenced this action in the Superior Court as a class action, alleging that the defendants misclassified the named plaintiffs and other similarly situated individuals as independent contractors and committed other violations of the Massachusetts Wage Act, G. L. c. 149, §§ 148, 148B, and 150 (Wage Act). The defendants moved to stay the court proceedings pending arbitration according to the terms of the arbitration clause contained in the parties' franchise agreements. A judge in the Superior Court denied the motion, concluding that because the arbitration clause barred class proceedings and prohibited an award of multiple damages, it was invalid and unenforceable under Massachusetts public policy as set forth in *Feeney* v. *Dell Inc.*, 454 Mass. 192 (2009) (*Feeney I*).

Following the decision of the United States Supreme Court in *AT&T Mobility LLC* v. *Concepcion*, 131 S. Ct. 1740, 1746 (2011) (*Concepcion*), which held that the Federal Arbitration Act (FAA) preempted a California rule that "classif[ied] most

___

[3]See note 8, *infra*.

collective-arbitration waivers in consumer contracts as unconscionable," the defendants filed a motion for reconsideration, which the motion judge denied.[4] The defendants petitioned for interlocutory review of the denial of their motion for reconsideration to a single justice of the Appeals Court, who referred the case to a full panel of the Appeals Court. The plaintiffs then filed an application with this court for direct appellate review, which we granted.

This case, which was paired for argument with *Feeney* v. *Dell Inc.*, *ante* 470 (2013) (*Feeney II*), presents two questions: whether *Feeney I* survives *Concepcion* and, if so, whether our ruling in *Feeney I* may apply to invalidate a class action waiver in an arbitration clause of an employment contract. In light of our interpretation of *Concepcion* and its impact on *Feeney I*, as set forth in *Feeney II*, *supra*, we conclude that because Massachusetts public policy in favor of class proceedings in certain contexts may no longer serve, in and of itself, as grounds to invalidate a class waiver in an arbitration agreement, and because the plaintiffs here are unable to demonstrate that they lack the practical means to pursue their relatively substantial claims on an individual basis, we must reverse the order invalidating the arbitration clause.[5]

1. *Background.* At this stage in the proceedings, the facts are not particularly well developed.[6] System4 is an Ohio limited liability company with offices in Massachusetts that, by its own

---

[4]We have considered and rejected the plaintiffs' argument that the defendants have waived arbitration by delaying in filing their motion for reconsideration following the release of *AT&T Mobility, LLC* v. *Concepcion*, 131 S. Ct. 1740 (2011) (*Concepcion*). The delay was a minor one during which the litigation did not progress in any significant manner, and accordingly, the plaintiffs have failed to demonstrate prejudice resulting from that delay.

[5]We acknowledge the amicus briefs submitted by Massachusetts AFL-CIO, Brazilian Immigrant Center, Brazilian Women's Group, Centro Presente, Chelsea Collaborative, Chinese Progressive Association, Massachusetts Coalition for Occupational Safety and Health, Massachusetts Immigrant and Refugee Advocacy Coalition, Massachusetts Jobs with Justice, Metrowest Worker Center, and Project Voice/American Friends Service Committee, in support of the plaintiffs; Public Justice, P.C., and Public Citizen, Inc., in support of the plaintiffs; New England Legal Foundation, in support of the defendants; and the Chamber of Commerce of the United States of America, in support of the defendants.

[6]The facts summarized here are taken from the pleadings, the defendants'

account, acts as a "master franchisor" to commercial janitorial cleaning businesses. NECCS, doing business as "System 4 of Boston, LLC," is also an Ohio limited liability company with offices in Massachusetts. System4 contracts with regional "sub-franchisors" like NECCS who, in turn, enter into "local franchise agreements" with "franchisees" like the plaintiffs who ultimately perform the cleaning services.

Plaintiffs Edson Teles Machado, Jocilene da Silva, Poliane Santos, and Luiz Santos entered into franchise agreements with the defendants.[7,8] The franchise agreements included an arbitration clause that, among other things, prohibits class actions and the award of multiple damages.[9]

---

motion to stay proceedings pending arbitration and their later motion for reconsideration, the accompanying affidavits of the president of NECCS in support of both motions, and the franchise agreements.

[7]Machado, da Silva, and Poliane Santos originally signed franchise agreements with System4 that were later assigned to NECCS; Luiz Santos signed a franchise agreement directly with NECCS. The text of the agreements is identical, except that Luiz Santos's agreement with NECCS substitutes the word "Franchisor" in place of "System 4."

[8]The defendants represent that plaintiffs Stenio Ferreira and Glaucea de Oliveira Santos are employees (and also spouses) of certain of the plaintiffs and therefore have no contractual relationship with either System4 or NECCS. Although it is still conceivable that these two plaintiffs could bring claims under the Massachusetts Wage Act, G. L. c. 149, §§ 148, 148B, and 150 (Wage Act), against the defendants, those claims would presumably not be subject to the arbitration clause at issue in this appeal. It is unclear why they are parties to this particular suit.

[9]The paragraph entitled "INFORMAL DISPUTE RESOLUTION" in the standard System4 local franchise agreement applicable to three of the plaintiffs provides in pertinent part:

> "B. *Arbitration.* Except for controversies, disputes or claims related to or based on: (1) any action by System4 to stop or prevent any threat or danger to public health or safety in connection with the operation of the Franchised Business; or (2) Franchisee's (including any of Franchisee's owners and principals) use of any Mark, all controversies, disputes or claims between System4 (including its subsidiaries, affiliates, shareholders, officers, directors, managers, representatives and employees) and Franchisee (including its owners, principals and guarantors, if applicable) arising out of or related to:
>
> > "(i) This Agreement or any other agreement between them or any provision of any agreement between them or the validity of any such agreement or provision;
> >
> > "(ii) System4's relationship with Franchisees; or

The substance of the complaint alleges that the defendants have utilized the services of the named plaintiffs and others similarly situated under the guise of a "franchisee" relationship, when the plaintiffs were in fact employees of the defendants as defined by G. L. c. 149, § 148B. The complaint further alleges that the defendants have committed numerous violations of the

> "(iii) Any standard, specification, or operating procedure relating to the establishment or operation of the Franchised Business;
>
> "will be submitted to and for binding arbitration in front of a single arbitrator of the American Arbitration Association (or any other alternative dispute resolution organization acceptable to the parties) conducted in accordance with its then current franchising arbitration rules, if any, otherwise its then current commercial arbitration rules at its office located nearest to the Franchisee (as defined in Paragraph 9 hereof) on the demand of either party. All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state arbitration law.
>
> "The arbitrator will have the right to award or include any relief which the arbitrator deems proper in the circumstances including without limitation money damages (with interest on unpaid amounts from the date due), specific performance, injunctive relief, attorney fees and costs (including the costs of arbitration) provided that the arbitrator will not have the right to declare any Mark generic or otherwise invalid or, except as otherwise provided in this Agreement, to award exemplary, punitive, penal or multiple (e.g. double or treble) damages. The award and decision of the arbitrator will be conclusive and binding upon all parties hereto and judgment upon the award may be entered in any court of competent jurisdiction.
>
> ". . .
>
> "System4 and Franchisee agree that arbitration will be conducted only on an individual, not a class-wide, basis, and that an arbitration proceeding between System4 (including solely at its election, and any of their respective subsidiaries, affiliates, shareholders, officers, directors, managers, representatives and employees) and Franchisee (including its owners, principals and guarantors, if applicable) may not be consolidated with any other arbitration proceeding between them and any other person or legal entity. No findings, conclusions, orders or awards emanating from any arbitration proceeding conducted hereunder may be introduced, referred to or used in any subsequent or other proceeding as a precedent, to collaterally estop any party from advancing any claim or defense or from raising any like or similar issues, or for any purpose whatsoever. The parties agree that the principle of collateral estoppel shall not apply in any arbitration proceeding conducted under this section."

Wage Act stemming from their misclassifying the plaintiffs as independent contractors. In their prayer for relief, the plaintiffs seek among their damages the refund of all "franchise fees" paid to the defendants, which range from a low of $9,541.83 to a high of $21,818.38 per plaintiff.

In his order denying the defendants' motion to stay the proceedings pending arbitration and invalidating the arbitration agreement, the motion judge stated simply that "[t]he arbitration clause . . . , which precludes class actions under [G. L. c. 93A] and the wage/hour laws [G. L. c. 149, § 150] and multiple damages[,] is contrary to public policy and therefore invalid," citing *Feeney I* for support. The defendants' motion for reconsideration in light of *Concepcion* was similarly denied without any findings of fact or analysis. Although the motion judge relied, at least in part, on public policy considerations outlined in *Feeney I* that he presumed were also applicable to Wage Act claims, he did not decide whether the plaintiffs were in fact misclassified and are thus entitled to the protections of the Wage Act. Although the parties contest the misclassification issue in their briefs, it is not before us on appeal. Therefore, to the extent our analysis depends on the plaintiffs' status as employees and the resultant applicability of the Wage Act, we assume for the purposes of this appeal that they are in fact employees under the Wage Act.[10]

2. *Discussion.* a. *Class waiver.* Our interpretation of *Concepcion* and its impact on *Feeney I* is set forth in detail in *Feeney II, supra* at 485-507, and does not require extensive recitation here. *Feeney I* survives *Concepcion* to the extent that a consumer plaintiff "can demonstrate that he or she effectively cannot pursue a claim against [a] defendant in individual arbitration according to the terms of the [arbitration] agreement." *Feeney II, supra* at 472. On such a demonstration, a court may invali-

---

[10]We do note, however, that a different judge in the Superior Court, in granting the plaintiffs' motion for an emergency protective order preventing the defendants from securing releases from potential class members, concluded that the plaintiffs demonstrated a likelihood of success on the merits. In reaching that conclusion, the judge noted the similarity between the facts of this case and the facts in *Awuah* v. *Coverall N. Am., Inc.,* 707 F. Supp. 2d 80, 84 85 (D. Mass. 2010), where cleaning workers designated as "franchisees" were held to be employees under the provisions of the Wage Act.

date a class waiver in an arbitration agreement without risking preemption by the FAA as interpreted by *Concepcion.* However, *Feeney II* limits *Feeney I* in two important respects: First, after *Concepcion,* a court's decision to invalidate a class action waiver in circumstances similar to those presented in the *Feeney* cases must be based not on the "fundamental policy of the Commonwealth favoring consumer class actions under G. L. c. 93A," *Feeney I, supra* at 193, but on the demonstrated inability of that consumer to "pursue their statutory claim under the individual claim arbitration process required by the arbitration agreement." *Feeney II, supra.* Second, on making the requisite finding, a court must invalidate the entire arbitration agreement and allow class litigation to proceed, as *Stolt-Nielsen S.A.* v. *Animal-Feeds Int'l Corp.,* 130 S. Ct. 1758 (2010) (*Stolt-Nielsen*), clearly prohibits a court from compelling nonconsensual class arbitration.

We see no principled reason to limit *Feeney I* (as refined by *Feeney II*) to consumer claims under G. L. c. 93A, because many of the same public policy arguments apply equally well to claims by employees under the Wage Act. Pursuant to *Feeney II,* it is clear that a plaintiff must demonstrate that he or she lacks the practical means to pursue a claim in individual arbitration or, put differently, that the class waiver, when combined with the other terms of the arbitration agreement, "effectively denies [the plaintiff] a remedy and insulates the defendant from private civil liability for violations of State law." *Feeney II, supra* at 471. If a plaintiff bringing a claim under the Wage Act could make such a showing, we would not hesitate to apply *Feeney II* to claims under the Wage Act.[11]

Critically however, following *Concepcion,* it is of no avail that a particular State statute like the Wage Act provides for a substantive right to bring a class proceeding. See G. L. c. 149, § 150 ("employee claiming to be aggrieved by a violation of [the Wage Act] may . . . institute and prosecute in his own

---

[11]Our analysis in *Feeney* v. *Dell Inc., ante* 470 (2013) (*Feeney II*), draws on several cases that address the issue of class-action waivers in arbitration agreements in the employment context. See *id.* at 484-485, 492, 496-499, citing *Sutherland* v. *Ernst & Young LLP,* 847 F. Supp. 2d 528 (S.D.N.Y. 2012), and *Franco* v. *Arakelian Enters., Inc.,* 211 Cal. App. 4th 314 (2012).

name and on his own behalf, or for himself and others similarly situated, a civil action"). We do not dispute the very legitimate policy rationales underlying the Legislature's decision to provide for class proceedings under the Wage Act,[12] nor are we blind to the fact that the Legislature may find its purposes frustrated by this outcome. See *Feeney II, supra* at 493 n.18. Nonetheless, where the right to a class proceeding has been waived as part of an agreement to arbitrate, *Concepcion* interprets the FAA to require enforcement of that class waiver regardless of any State law or policy to the contrary. See *Concepcion, supra* at 1753. See also *Southland Corp.* v. *Keating*, 465 U.S. 1, 10 (1984) (antiwaiver provision of California franchise investment law preempted by FAA to extent it had been interpreted to require judicial forum).

This is so because the " 'changes brought about by the shift from bilateral arbitration to class-action arbitration' are 'funda-mental,' " *Concepcion, supra* at 1750, quoting *Stolt-Nielsen, supra* at 1776, and therefore, "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion, supra* at 1748. It follows that, because nonconsen-sual class arbitration is forbidden by *Stolt-Nielsen* and *Concep-cion,* enforcement of a substantive State statutory right to a class proceeding would be tantamount to requiring a judicial forum for a particular type of dispute, a result the FAA clearly prohibits. See *Marmet Health Care Ctr., Inc.* v. *Brown,* 132 S. Ct. 1201, 1203-1204 (2012) (per curiam) (FAA preempted State court decision holding unconscionable, as matter of public policy, clause in nursing home contract that required arbitration of personal injury claims); *Perry* v. *Thomas,* 482 U.S. 483 (1987) (FAA preempted provision of California wage law that mandated judicial forum for resolution of disputes under that law). See also *Southland Corp.* v. *Keating, supra.* The Supreme Court in *Concepcion* has declared that the inherent conflict between

---

[12]These policy rationales include the deterrent effect of class action lawsuits and, unique to the employment context, the desire to allow one or more coura-geous employees the ability to bring claims on behalf of other employees who are too intimidated by the threat of retaliation and termination to exercise their rights under the Wage Act. See *Salvas* v. *Wal-Mart Stores, Inc.*, 452 Mass. 337, 369 (2008).

arbitration and class proceedings must be resolved in favor of arbitration, as long as a class waiver does not operate to deny a plaintiff any meaningful remedy. *Concepcion, supra* at 1750-1753. Accordingly, *Feeney II* clearly indicates that any invalidation of an arbitration agreement on public policy grounds following *Concepcion* must be based not on the public policy favoring class actions manifested in G. L. c. 93A, § 9 (2), and G. L. c. 149, § 150, which the FAA will preempt,[13] but instead on a public policy opposing exculpatory contracts, which under certain conditions can coexist with the FAA. *Feeney II, supra* at 500-503.

Unlike the plaintiffs in *Feeney II*, whose claimed damages totaled $13.65 and $215.55, respectively, the individual plaintiffs here claim damages that, in the form of improper franchise fees alone, total $21,818.38, $17,227.93, $14,949.73, and $9,541.83, respectively. Cf. *Awuah* v. *Coverall N. Am., Inc.*, 460 Mass. 484, 497-499 (2011) (on similar facts, plaintiffs entitled to recover franchise fees as type of "damages incurred" under G. L. c. 149, § 150). Other claimed but as of yet unspecified damages, in the form of unpaid wages, are subject to mandatory trebling under G. L. c. 149, § 150. See *Melia* v. *Zenhire, Inc.*, 462 Mass. 164, 171 n.8 (2012). Although the magnitude of potential damages is not the sole criterion to be considered in determining whether a claim is remediable in individual arbitration according to the terms of the arbitration agreement, it may be the most important factor. Particularly given *Concepcion*'s rejection of the notion that damages of $4,000 were sufficiently small to require class proceedings for the vindication of claims, see *Concepcion, supra* at 1750, citing *Oestreicher* v. *Alienware Corp.*, 322 Fed. Appx. 489, 492 (9th Cir. 2009), it would be difficult for us to conclude that potential damages of approximately $10,000 or greater are so small as to preclude the bringing of claims in individual arbitration. Furthermore, for Wage Act claims, § 150 provides that "[a]n employee so aggrieved who prevails in such an action . . . *shall* also be awarded the costs of the litigation and reasonable attorney's fees" (emphasis added). For reasons similar to those discussed in the next sec-

---

[13]This is assuming, of course, that the parties have entered into an otherwise valid agreement to arbitrate, and that the agreement does not expressly provide for class proceedings. See *Concepcion, supra* at 1752-1753.

tion, the arbitrator is bound to make such an award in the event the plaintiffs prevail. See *Awuah* v. *Coverall N. Am., Inc.*, 791 F. Supp. 2d 284, 287-288, 290-291 (D. Mass. 2011) (recognizing award of attorney's fees and costs to prevailing plaintiff is mandatory under Wage Act; awarding over $34,000 in fees and over $3,000 in costs on individual arbitration awards of approximately $1,600 and $5,700). See also *Killeen* v. *Westban Hotel Venture, LP*, 69 Mass. App. Ct. 784, 790 (2007). We are therefore not persuaded by the plaintiffs' contention that their claims are nonremediable in individual arbitration because the costs of arbitration "would more than surpass any potential recovery that they might be entitled to."[14]

b. *Waiver of multiple damages.* Although not thoroughly briefed by the parties, the motion judge cited the arbitration clause's prohibition on multiple damages as a basis for his conclusion that the agreement was unenforceable as against public policy. Accordingly, we briefly address that issue.

General Laws c. 149, § 150, provides that "[a]n employee so aggrieved [by a violation of the Wage Act] who prevails in such an action *shall* be awarded treble damages, as liquidated damages, for any lost wages and other benefits and *shall* also be awarded the costs of the litigation and reasonable attorney's fees" (emphasis added). In turn, G. L. c. 149, § 148, provides that "[n]o person shall by a special contract with an employee or by any other means exempt himself from this section or from [§ 150]." Further, "[a]n agreement to circumvent the Wage Act is illegal even when 'the arrangement is voluntary and assented to.' " *Melia* v. *Zenhire, Inc., supra* at 170, quoting *Camara* v. *Attorney Gen.*, 458 Mass. 756, 760-761 (2011). Accordingly, because the award of treble damages is mandatory under G. L. c. 149, § 150, and cannot be waived, that waiver must be invalidated. See *Kristian* v. *Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006). The defendants argue that were this court to find that multiple damages under the Wage Act are not waivable, the offending term can be severed in accordance with the

---

[14]The plaintiffs rely primarily on an affidavit, prepared in a different case, of an attorney with expertise in franchise arbitration who averred that the cost of individual arbitration in these types of disputes essentially always exceeds a plaintiff's potential recovery.

terms of the arbitration agreement, while preserving the arbitral forum.[15] See *Anderson* v. *Comcast Corp.*, 500 F.3d 66, 77 (1st Cir. 2007); *Kristian* v. *Comcast Corp.*, *supra* at 48. We agree. The waiver of multiple damages is accordingly severed.[16]

Prior to *Concepcion*, the provision for class proceedings in § 150 and the prohibition on special contracts in § 148 likely would have compelled us to invalidate and sever the class waiver in the same manner as we have invalidated and severed the waiver of multiple damages today. Our analysis of the public policy rationales underlying the need for class proceedings in *Feeney I*, *supra*, supports this hypothesis. As for why, following *Concepcion*, the multiple damages waiver can be invalidated and severed and the class action waiver cannot, the answer lies in the relationship between the respective terms and the very nature of the arbitral forum. As previously discussed and analyzed in *Feeney II*, *supra*, the Supreme Court in *Stolt-Nielsen* and *Concepcion* declared the existence of an inherent conflict between class proceedings and "arbitration as envisioned by the FAA." *Concepcion*, *supra* at 1753. This conflict stems largely from the procedural informality of arbitration and the "fundamental" changes to the character of the proceeding that result from a shift from individual to class arbitration. See *Concepcion*, *supra* at 1750, citing *Stolt-Nielsen*, *supra* at 1776. Class waivers thus enjoy special status under the FAA. In contrast, the availability of statutorily mandated multiple damages does not impinge on any fundamental characteristic of arbitration, nor does it frustrate the purpose of the arbitral forum. The mandatory award of treble damages to a prevailing plaintiff under the Wage Act simply affects the clerical task of calculating damages. The enforcement of the mandatory multiple damages and antiwaiver provisions of the Wage Act thus in no way "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, *supra* at 1748. Therefore, the FAA

[15]We note, however, that whether an arbitration agreement explicitly provides for the severance of unenforceable terms is not dispositive of the question whether those terms may in fact be severed.

[16]Because on appeal the parties have not contested the enforceability of any of the other specific terms of the arbitration agreement in any particularity, we decline to address any potential issue with remaining terms.

does not preempt this court's holding that the waiver of multiple damages is void as contrary to public policy.

3. *Conclusion.* For the reasons stated, we decline to invalidate the class waiver but declare the waiver of multiple damages unenforceable with respect to viable Wage Act claims. We remand this case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.**

---

*Subsequent to the release of the slip opinion in this case, the court stayed the issuance of the rescript. See rescript opinion, 466 Mass. 1004 (2013). — REPORTER.