# United States Court of Appeals
## For the First Circuit

No. 16-2109

YILKAL BEKELE,

Plaintiff, Appellant,

v.

LYFT, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,* Associate Justice,
and Stahl, Circuit Judge.

Shannon Liss-Riordan, with whom Adelaide H. Pagano and Lichten & Liss-Riordan, P.C. were on brief, for appellant.
Michael Rubin and Altshuler Berzon LLP on brief for Labor Law Scholars, amici curiae.
Evan M. Tager, with whom Archis A. Parasharami, Matthew A. Waring, and Mayer Brown LLP were on brief, for appellee.
Bryan K. Weir, Thomas R. McCarthy, Cameron T. Norris, Consovoy McCarthy Park PLLC, Steven P. Lehotsky, Michael B. Schon, and U.S. Chamber Litigation Center on brief for Chamber of Commerce of the United States of America, amicus curiae.

_____

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

March 13, 2019

**LYNCH**, **Circuit Judge**.  This case is about the enforceability of an arbitration clause alleged to be unconscionable under Massachusetts law.

Yilkal Bekele, the plaintiff, drove for Lyft, Inc., the defendant, starting in mid-2014.  Bekele tapped "I accept" on his iPhone 4 when presented with Lyft's Terms of Service Agreement ("TOS Agreement"), which contains a provision requiring that all disputes between the parties be resolved by one-on-one arbitration.  Bekele later brought a putative class action in Massachusetts Superior Court against Lyft alleging that the company misclassifies its drivers as independent contractors under that Commonwealth's wage law.  After removing the case to federal court, Lyft moved to dismiss in favor of arbitration of Bekele's claim in his individual capacity, invoking the clause in the TOS Agreement that required arbitration and that precluded class, collective, or representative proceedings.  Concluding that the parties had a valid and enforceable agreement to arbitrate, the district court granted the motion and dismissed the case in favor of individual arbitration.  See Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 314 (D. Mass. 2016).  We affirm.

I.

A.   Factual Background

The following undisputed facts are drawn from the complaint and the parties' submissions to the district court.  See,

- 3 -

e.g., Justiniano v. Soc. Sec. Admin., 876 F.3d 14, 17 (1st Cir. 2017).

Lyft operates a ride-hailing service. Customers use its mobile-phone application ("the App") to request rides. The App then matches each ride request with a Lyft driver in the area.

Before Bekele started driving for Lyft in Boston in the summer of 2014, he downloaded the App on his iPhone 4 and completed the registration process that Lyft requires of customers and drivers before they use Lyft's service. When Bekele registered, users were presented, at one step, with a screen titled "Lyft Terms of Service," which displayed sixteen lines of text from the TOS Agreement in grey ink on a white background. The text explained, "[t]his following user agreement describes the terms and conditions on which Lyft, Inc. offers you access to the Lyft platform," and "[t]his Agreement is a legally binding agreement made between you . . . and Lyft, Inc." Beneath that text, a turquoise-colored "I accept" button appeared.

The TOS Agreement's specific provisions were outlined in the text that followed these initial sixteen lines. Users could scroll through the entire text of the TOS Agreement on this screen, but scrolling was not required before accepting. Tapping "I accept" allowed the user to proceed to the next stage of the registration process. But a user who did not accept the terms could not finish registering. The sixth paragraph of the agreement

- 4 -

explained this, as well as the process by which Lyft could modify the TOS Agreement:

> IF YOU DO NOT AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT, PLEASE DO NOT USE OR ACCESS LYFT OR REGISTER FOR THE SERVICES PROVIDED ON LYFT. We may amend this Agreement at any time by posting the amended terms on the Lyft Platform. If We post amended terms on the Lyft platform, You may not use the Services without accepting them. Except as stated below, all amended terms shall automatically be effective after they are posted on the Lyft Platform. This Agreement may not be otherwise amended except in writing signed by You and Lyft.

The arbitration clause appeared about two-thirds of the way through the TOS Agreement.[1] We reproduce the clause with its original bold, capitalized heading and capitalized conclusion:

> **AGREEMENT TO ARBITRATE ALL DISPUTES AND LEGAL CLAIMS**
>
> You and We agree that any legal disputes or claims arising out of or related to the Agreement (including but not limited to the use of the Lyft Platform and/or the Services, or the interpretation, enforceability, revocability, or validity of the Agreement, or the arbitrability of any dispute), that cannot be resolved informally shall be submitted to binding arbitration in the state in which the Agreement was performed. The arbitration shall be conducted by the American Arbitration Association under its Commercial Arbitration Rules (a copy of which can be obtained here [the word here is a hyperlink to the Commercial Arbitration Rules]), or as

---

[1] The TOS Agreement is about eighteen pages long, printed on standard paper, and Bekele estimates that it would be fifty-five pages on an iPhone 4. The arbitration clause was on page twelve of the printed version of the Agreement and at around page forty of the iPhone 4 version.

otherwise mutually agreed by you and we. Any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Claims shall be brought within the time required by applicable law. You and we agree that any claim, action or proceeding arising out of or related to the Agreement must be brought in your individual capacity, and not as a plaintiff or class member in any purported class, collective, or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative, collective, or class proceeding. YOU ACKNOWLEDGE AND AGREE THAT YOU AND LYFT ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.

Bekele tapped "I accept" on the TOS Agreement on May 19, 2014 at 11:45 am; on September 24, 2014 at 10:07 am; and again on October 11, 2014 at 12:25 pm. The record is silent on why Bekele accepted the agreement three times. See Bekele, 199 F. Supp. 3d at 289 n.2. The parties agree that the TOS Agreement in effect on October 11, 2014 controls this case. Id. at 289.

B.    Procedural History

Bekele's complaint on behalf of a class of Massachusetts Lyft drivers alleges that Lyft violated the Massachusetts Wage Act by classifying drivers as independent contractors rather than as employees, see Mass. Gen. Laws ch. 149 § 148B, and by requiring drivers to bear expenses such as gas and car maintenance, see id. § 148.

- 6 -

Lyft moved to dismiss the complaint and to compel individual arbitration under the Federal Arbitration Act ("FAA"). The parties later agreed to treat Lyft's motion as a motion for partial summary judgment. See Bekele, 199 F. Supp. 3d at 288. Relevantly, the FAA provides that

> a written provision in any . . . contract
> . . . to settle by arbitration a controversy
> thereafter arising out of such contract . . .
> shall be valid, irrevocable, and enforceable,
> save upon such grounds as exist at law or in
> equity for the revocation of any contract.

9 U.S.C. § 2. State contract law supplies the principles for determining validity, revocability, and enforceability. See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996).

In opposing Lyft's motion, Bekele argued that no valid contract to arbitrate had been formed under Massachusetts law. He also argued that, even if a valid contract had been formed, it would be unenforceable under the FAA's savings clause for two reasons: (1) because its class-waiver provision violates the right to engage in concerted action granted by the National Labor Relations Act (NLRA), and (2) because any agreement to arbitrate was procedurally and substantively unconscionable under Massachusetts law.

On substantive unconscionability, an issue we take up in greater detail in the analysis, Bekele challenged the arbitration clause's selection of the American Arbitration Association (AAA)

- 7 -

Commercial Rules. In October 2014, when the parties' agreement was signed, these Rules required that parties like Bekele and Lyft split equally the arbitration's costs.[2] Limited exceptions to this cost-splitting arrangement existed, but Bekele argued that, under the 2014 Rules, he would have been charged $3,750 -- half of the $7,500 initial arbitration fee -- to have an arbitrator decide the threshold issue of fee apportionment. He argued that these fees were unaffordably high for Lyft drivers like him and that the inclusion of the Rules requiring fee-splitting was therefore unconscionably oppressive. Lyft responded that the mere reference to the AAA Rules in the agreement could not be unconscionable. Significantly, it also bound itself to pay the full costs of any arbitration with Bekele.

Ultimately, the district court dismissed the case in favor of individual arbitration. See Bekele, 199 F. Supp. 3d at 293-94, 314.

Bekele appealed. His initial brief, filed in January 2017, focused on the NLRA question. It also argued that the agreement was unconscionable, but it did not raise the formation issue. Before Lyft had filed its response, the Supreme Court

---

[2] In a supplemental filing after oral argument in this court, Lyft noted that, in October 2017, the AAA changed the fee schedule applicable to claims like Bekele's that are about work. The now-applicable fee schedule limits Bekele's arbitration costs to $300. See Am. Arbitration Ass'n, Commercial Arbitration Rules and Mediation Procedures, Rule R-1, at 10 (2017).

granted certiorari in Lewis v. Epic Systems Corp., 823 F.3d 1147 (7th Cir. 2016), cert. granted, 137 S. Ct. 809 (mem.) (2017), to decide whether class-action waivers in arbitration agreements violate the NLRA. On Lyft's motion, we then ordered this appeal held in abeyance pending the Supreme Court's decision.

While the appeal was stayed, this court decided Cullinane v. Uber Technologies, Inc., 893 F.3d 53 (1st Cir. 2018), which held that no valid agreement to arbitrate had been formed under Massachusetts law between Uber and customers who registered on Uber's mobile-phone application. Id. at 64.

In May 2018, the Supreme Court held in Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018), that class and collective action bars in arbitration agreements are not incompatible with the NLRA and are therefore enforceable under the FAA. Id. at 1619.

Lyft and Bekele next agreed, in a Joint Status Report, that, after Epic Systems, Bekele cannot prevail on his argument that the arbitration agreement violates the NLRA. The parties proposed that Bekele be allowed to file a supplemental opening brief arguing that no agreement to arbitrate had been formed under Cullinane.

We lifted the stay and allowed this supplemental brief. Bekele filed his supplemental brief, Lyft then responded, and Bekele replied.

A.    Waiver of Contract Formation Issue

Bekele waived the contract formation issue by not raising it in his opening brief.  It is well settled that "we do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief." Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015).  And we are even more reluctant to excuse deliberate waiver than we are to overlook inadvertent forfeiture.  See Sindi v. El-Moslimany, 896 F.3d 1, 28-29 (1st Cir. 2018) (acknowledging this); Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 628 (1st Cir. 1995) (same).  Here, Bekele sought to appeal the formation issue only after Epic Systems foreclosed the argument on which he had chosen to focus in his initial brief.

Bekele argues that unusual features of the briefing here weigh against applying this waiver rule to his contract-formation argument.  But we find that Bekele has not shown "exceptional circumstances" that excuse his belated appellate briefing.  See, e.g., Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1571 (1st Cir. 1994) (noting that such circumstances can excuse waiver).

Bekele first argues that Lyft would not be prejudiced if we considered the argument.  But (even assuming there would be no prejudice to Lyft if the argument were considered) lack of prejudice to the opposing party is not on its own an exceptional

circumstance justifying forgiveness of a waiver.  See Sindi 896 F.3d at 27-28 (listing circumstances that, taken together, justify forgiveness of waiver).  For example, recently, in United States v. Mayendía-Blanco, 905 F.3d 26, 33 (1st Cir. 2018), we deemed waived an argument raised for the first time on appeal, in a criminal defendant's supplemental brief, even though the supplemental brief was filed before the government's response. See id. at 31.  Lack of prejudice to the government was not a circumstance that warranted excusing the defendant's failure to initially raise the argument.  See id. at 33.

Nor does our decision in Cullinane, decided between Bekele's opening and supplemental briefs, amount to an exceptional circumstance.  Cullinane did not "substantial[ly] change" the applicable law.  Mayendía-Blanco, 905 F.3d at 33 (noting that a "substantial change" in law can justify excusing waiver in an opening brief); see also, e.g., DSC Commc'ns Corp. v. Next Level Commc'ns, 107 F.3d 322, 326 (5th Cir. 1997) (recognizing the same in the civil context).  Indeed, Cullinane applied the very same rule that the district court used in this case: the "reasonably communicated and accepted" standard.  Compare Cullinane, 893 F.3d at 62, with Bekele, 199 F. Supp. 3d at 295.  That standard had been adopted for online contracts in a 2013 Massachusetts case, Ajemian v. Yahoo!, Inc., 987 N.E.2d 604 (Mass. App. Ct. 2013),

- 11 -

cited by both Cullinane and the district court.  See Cullinane, 893 F.3d at 62; Bekele, 199 F. Supp. 3d at 295.

Bekele mistakenly reads Cullinane as newly clarifying that reasonable notice must be determined based on context.  But that was clear before Cullinane.  The reasonable notice standard has governed online contracts across jurisdictions since the early days of the internet, and the inquiry has always been context- and fact-specific.  See, e.g., Starke v. SquareTrade, Inc., 913 F.3d 279, 289-96 (2d Cir. 2019) (looking at the "design and content of the relevant interface," id. at 289, and summarizing cases); Sgouros v. TransUnion Corp., 817 F.3d 1029, 1034-35 (7th Cir. 2016) ("This is a fact-intensive inquiry."); Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 30-35 (2d Cir. 2002) (Sotomayor, J.) (describing the screen seen by the user and evaluating all "these circumstances," id. at 31).

In sum, Bekele waived his contract-formation argument when he chose not to raise it in his opening brief.

B.   Substantive Unconscionability

Bekele also contends that the agreement to arbitrate is unconscionable  and  therefore  unenforceable.   To  show unconscionability under Massachusetts law, Bekele must prove "both substantive unconscionability (that the terms are oppressive to one   party)   and   procedural   unconscionability   (that   the circumstances surrounding the formation of the contract show that

- 12 -

the aggrieved party had no meaningful choice and was subject to unfair surprise)."  Machado v. System4 LLC (Machado II), 28 N.E.3d 401, 414 (Mass. 2015) (emphasis added) (citations and internal quotation marks omitted).  Reviewing de novo, see Cullinane, 893 F.3d at 60, we put aside Bekele's procedural attack and decide that, because Bekele cannot show substantive unconscionability, the agreement is enforceable.

Bekele's principal argument that the agreement is substantively unconscionable stems from the arbitration clause's selection of AAA Commercial Rules.  As said, in October 2014 when the parties' agreement was formed, these Rules required Bekele and Lyft to split equally the arbitration's costs.  Bekele argues that he and other Lyft drivers cannot afford such high fees and that this arrangement is substantively unconscionable.  Under the precedent of this court and the Massachusetts Supreme Judicial Court ("SJC"), Lyft's offer before the district court to pay all fees for an arbitration with Bekele sinks this argument.

In Massachusetts, an arbitration-fee-splitting arrangement is not substantively unconscionable when the arbitration fees a plaintiff would owe amount to less than the damages the plaintiff claims.[3]  For example, the SJC said in McInnes

---

[3]  Machado v. System4 LLC (Machado I), 989 N.E.2d 464 (Mass. 2013) concluded that a state-law rule that high arbitration fees can render an arbitration agreement unenforceable could "coexist with the FAA," which preempts states' arbitration-specific

- 13 -

v. LPL Financial, LLC, 994 N.E.2d 790 (Mass. 2013), that "an adhesion contract that imposes 'filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable' may . . . be unenforceable." Id. at 798-99 (quoting Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 236 (2013)). McInnes then enforced the arbitration provision at issue because "the amount of the arbitration fees would not make access to the arbitral forum impracticable in view of the substantial amount in compensatory damages that [the plaintiff] claims." Id. at 799. Again, in Machado v. System4 LLC (Machado I), 989 N.E.2d 464 (Mass. 2013) and Machado v. System4 LLC (Machado II), 28 N.E.3d 401 (Mass. 2015), the SJC concluded that a provision that required splitting arbitration costs was enforceable and not substantively unconscionable because the plaintiffs' costs of arbitration were less than the plaintiffs' potential recovery under the Wage Act.[4] Machado II, 28 N.E.3d at 414 (citing Machado

_____

contract defenses. Id. at 471 (discussing AT&T Mobility LLC v. Concepcion, 536 U.S. 333 (2011)). Because Bekele's substantive unconscionability argument cannot succeed on the present facts, we need not get into this issue.

    [4] Lyft argues that Machado II adopts a per se rule that cost-sharing for arbitration of Wage Act claims is not substantively unconscionable. Not so. Machado II reasoned that a cost-splitting provision was not substantively unconscionable because the SJC "made clear in Machado I that the mandates of the Wage Act would override this provision if the plaintiffs were successful in arbitration." Machado II, 28 N.E.3d at 414 (citing Machado I, 989 N.E.2d at 471-72). Machado I had made this clear by comparing the plaintiffs' costs of arbitration to the

- 14 -

I, 989 N.E.2d at 471-72). Here, Bekele faces $0 in arbitration fees, an amount lower than his potential recovery (which he estimates could be about $1,000). As in McInnes and Machado I and II, then, the agreement is enforceable.

Bekele contends that Lyft's offer to pay for arbitration cannot be considered because, under more general principles of Massachusetts law, unconscionability is determined at the time of contracting. See Miller v. Cotter, 863 N.E.2d 537, 545 (Mass. 2007). But Massachusetts' specific framework for evaluating fee-sharing arrangements allows courts to consider facts developed during litigation, such as Lyft's offer to pay. In fact, the case-specific evaluation McInnes and Machado I and II require us to undertake depends on facts and figures, such as the claims and potential recovery, unknowable at the time of contracting.

Courts use a similar approach to evaluate arbitration fees when the claims that would be arbitrated are federal statutory claims. See Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90 (2000) (recognizing that "large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum" and holding that such costs could render an arbitration agreement unenforceable as to those federal claims). Indeed, in that context, this court has enforced

---

plaintiffs' potential recovery under the Wage Act. Machado I, 989 N.E.2d at 471-72.

an arbitration agreement under circumstances like those presented here. In <u>Large</u> v. <u>Conseco Finance Servicing Corp.</u>, 292 F.3d 49 (1st Cir. 2002), the plaintiffs sought to avoid arbitration of their claims under the Federal Truth in Lending Act because arbitrating would be prohibitively expensive. <u>Id.</u> at 56. After the other party agreed to pay for the arbitration, the <u>Large</u> court compelled arbitration and rejected the plaintiffs' request for discovery on costs. <u>Id.</u> at 56-57. We held that no showing of prohibitive costs was "possible because [the other party] has agreed to cover the costs of arbitration." <u>Id.</u> at 56. Numerous other federal courts have done the same in cases involving offers to pay for arbitration of federal statutory claims. <u>See, e.g.</u>, <u>Muriithi</u> v. <u>Shuttle Express, Inc.</u>, 712 F.3d 173, 183 n.10 (4th Cir. 2013); <u>Ragone</u> v. <u>Atl. Video at Manhattan Ctr.</u>, 595 F.3d 115, 125 (2d Cir. 2010).

Bekele further argues that, even considering Lyft's offer, the cost-sharing requirement is substantively unconscionable. He points to cases holding that fee splitting is per se unconscionable under California law. <u>See, e.g.</u>, <u>Ting</u> v. <u>AT&T</u>, 319 F.3d 1126, 1151 (9th Cir. 2003); <u>Circuit City Stores</u> v. <u>Adams</u>, 279 F.3d 889, 892 (9th Cir. 2002). But, as explained, Massachusetts has taken a case-specific approach to evaluating fee-splitting arrangements.

- 16 -

Bekele next urges us to adopt a rule that a cost-splitting provision is "unenforceable whenever it would have the 'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights." Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 661 (6th Cir 2003). But this too would conflict with the SJC's case-by-case approach, which looks not at the contract in the abstract nor at other potential litigants but at the individual claimant. Here, Lyft's offer to pay to arbitrate Bekele's claims means that he cannot show that the arbitration clause's fee-sharing arrangement renders that provision unenforceable.

Bekele makes one final argument: that the TOS Agreement's provision allowing Lyft to modify the terms of the agreement upon notice and acceptance of the new terms is substantively unconscionable.[5] He relies on Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1179 (9th Cir. 2003), a case deeming "unilateral power to terminate or modify [a contract] substantively unconscionable" under California law.[6] But the Lyft

---

[5] Because we do not get into matters of procedural unconscionability, we do not consider Bekele's distinct argument that the specific process by which Lyft amended the terms of the agreement in October 2014 was procedurally unconscionable.

[6] Bekele also points to Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306 (6th Cir. 2000), but that case is not instructive. It is about fatally indefinite contract terms, not substantive unconscionability. See id. at 315 ("The purported arbitration agreement therefore lacks a mutuality of obligation. Without a mutuality of obligation, the agreement lacks

TOS Agreement does not allow unilateral modification; it requires that Lyft give notice to the user and that the user accept the new terms.  In contrast, the modification clause in Ingle allowed the employer to revise the contract's terms and then notify employees months after the fact.  Id.  Other courts have rejected the argument that provisions like Lyft's -- that require notice to users and acceptance by users -- are substantively unconscionable. See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 173-74 (5th Cir. 2004) (applying Louisiana law).  Bekele offers no evidence that a Massachusetts court would consider the mere presence of a provision allowing the parties to modify their agreement to be oppressive.

III.

Affirmed.

---

consideration and, accordingly, does not constitute an enforceable arbitration agreement." (footnote omitted)).