NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-904                                        Appeals Court

        CARLOS E. LOPEZ RIVERA  vs.  STEVEN W. STETSON.


                        No. 22-P-904.

        Worcester.     March 3, 2023. – August 31, 2023.

            Present:  Wolohojian, Shin, & Hodgens, JJ.


Arbitration.  Contract, Arbitration, Misrepresentation, Duress.
    Fraud.



    Civil action commenced in the Superior Court Department on
September 25, 2020.

    A motion to compel arbitration was heard by Valerie A.
Yarashus, J.


    Andrew D. Black (Barbara H. Buell also present) for the
defendant.
    Robert A. Scott for the plaintiff.


    HODGENS, J.  Wanting vision correction, the plaintiff,

Carlos E. Lopez Rivera (Lopez), engaged the services of the

defendant eye surgeon, Steven W. Stetson.  Prior to surgery,

Lopez signed a form agreeing to submit any disputes regarding

the surgery to arbitration.  Dissatisfied with the surgery,

Lopez filed a medical malpractice complaint in the Superior Court, and Stetson moved to dismiss and to compel arbitration pursuant to the signed agreement. A Superior Court judge denied the motion concluding that Stetson's "failure to translate" the arbitration agreement into Spanish amounted to "fraud in the inducement" and rendered the agreement invalid and unenforceable. We reverse.

Background. On the morning scheduled for his elective surgery, Lopez signed and initialed four forms, printed in English, and provided by Stetson: (1) a patient arbitration agreement; (2) a patient consent for surgery and receipt of medical information; (3) a patient consent for laser vision correction; and (4) a lifetime assurance plan. According to the arbitration agreement, the "[p]atient agree[d] that . . . any and all actions for medical malpractice . . . shall be resolved by mandatory and binding arbitration."

Following the surgery, Lopez filed a complaint against Stetson and the Lasik Vision Institute, LLC (LVI), in the Superior Court alleging medical malpractice.[1] Pursuant to G. L. c. 251, § 2 (a), Stetson moved to dismiss and to compel arbitration according to the terms of the arbitration agreement. In opposition, Lopez claimed that "no such [arbitration]

---

[1] LVI did not file an answer and is not a party to this appeal.

agreement exists because the patient was incapable of understanding the document."  Lopez argued that the arbitration agreement was the product of fraud, mistake, and unconscionability.

After an expedited evidentiary hearing that included testimony from Lopez, Stetson, and a technician in Stetson's office, the judge made findings of fact and rulings of law.  She found that no one explained the arbitration agreement to Lopez in his primary language (Spanish), but an interpreter was available had Lopez requested one.  The judge also found that Lopez lacked a sufficient understanding of English to know what he was signing, and "that in signing a stack of multiple forms without translating into Spanish that one of these forms was for binding arbitration, [Lopez] was led to believe that he was signing medical forms."  Generally citing fraud, duress, and unconscionability, the judge denied Stetson's motion to dismiss and to compel arbitration.  Stetson appeals from this interlocutory order pursuant to G. L. c. 251, § 18 (a) (1).  See Joulé, Inc. v. Simmons, 459 Mass. 88, 92 (2011).

Discussion.  Arbitration agreements regarding activities involving interstate commerce are governed by Federal and State law.  See Miller v. Cotter, 448 Mass. 671, 678 (2007).  See generally 9 U.S.C. §§ 1 et seq.; G. L. c. 251, §§ 1 et seq.  "Healthcare is such an activity."  Miller, supra.  Under

identical language in the governing statutes, arbitration agreements "shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." G. L. c. 251, § 1. Compare 9 U.S.C. § 2 (same language but switching order of words "enforceable" and "irrevocable"). These grounds include "generally applicable contract defenses," Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996), including "fraud, duress, or unconscionability." Miller, supra at 679. "State contract law supplies the principles for determining validity, revocability, and enforceability." Bekele v. Lyft, Inc., 918 F.3d 181, 185 (1st Cir. 2019). "What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281 (1995). "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" Doctor's Assocs., Inc., supra, quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974). On appeal from the denial of a motion to dismiss and to compel arbitration, we apply "de novo" review to the motion judge's legal conclusions, Archer v. Grubhub, Inc., 490 Mass. 352, 355 (2022), and we "defer to the motion judge's findings of fact

unless clearly erroneous."  Licata v. GGNSC Malden Dexter LLC,
466 Mass. 793, 796 (2014).

Based upon the "totality of the circumstances" presented by
undisputed facts in the record, we conclude that the parties
formed a valid arbitration agreement (citation omitted).
Archer, 490 Mass. at 361.  "[F]or there to be an enforceable
contract, there must be both reasonable notice of the terms and
a reasonable manifestation of assent to those terms."  Kauders
v. Uber Techs., Inc., 486 Mass. 557, 572 (2021).  The record
shows that Lopez had reasonable notice of the arbitration
agreement, and that he manifested his assent to the agreement.
Stetson's office staff presented to Lopez four forms, including
the arbitration agreement.  Text at the top of the arbitration
form clearly identified the document as "PATIENT ARBITRATION
AGREEMENT."  The first paragraph, titled "ARBITRATION," stated
that any claim, including "medical malpractice," must be
resolved by "mandatory and binding arbitration" as the "sole and
exclusive means for . . . resolving any claim."  The second
paragraph, titled "PROCEDURE FOR ARBITRATION," stated that the
American Arbitration Association decision would be "final and
binding for both parties."  The third and last paragraph, titled
"CONSIDERATION," stated that Lopez "has read, understands, and
had an opportunity to refuse to execute this arbitration
agreement and agrees to be legally bound by its terms."  Lopez

signed and dated the arbitration agreement on the lines indicated.  These facts amply demonstrate a valid arbitration agreement because Lopez had reasonable notice of the terms of the agreement and manifested his assent.  See Archer, supra (arbitration agreement valid "even if the party did not actually view the agreement, so long as the party had an adequate opportunity to do so").

Lopez's lack of facility with the English language does not require a different result.  Lopez testified that he had lived in Massachusetts for twelve years at the time of his surgery and had learned a "little bit" of English "on the streets."  Lopez further testified that if the arbitration agreement had been read to him in Spanish, he would not have signed it.  The judge found, "Mr. Lopez's primary language is Spanish, but he understood some limited English from living and working in the United States for more than twelve years by the time of these events in 2017."  The judge also found, "Mr. Lopez did not have a sufficient understanding of English to allow him to read the Arbitration Agreement."  "The general rule is that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not.  This rule applies to a person who cannot read."  Wilkisius v. Sheehan, 258 Mass. 240, 243 (1927).  The rule also applies to those who lack an "understanding" of the terms of the agreement or "the English

language." Paulink v. American Express Co., 265 Mass. 182, 185 (1928). "Written contracts are intended to preserve the exact terms of the obligations assumed, so that they may not be subject to the chances of a want of recollection or an intentional misstatement." Grace v. Adams, 100 Mass. 505, 507 (1868). This longstanding rule "rests upon the fundamental need for security in business transactions." 1 R.A. Lord, Williston on Contracts § 4:19 (4th ed. 2022). These legal principles underscore that there is a "solemnity [to] physically signing a written contract" that renders a signature more than just a fancy ornament on a document. Kauders, 486 Mass. at 574.

We disagree with Lopez's contention that the arbitration agreement presented a "different species of document" that required something more than just reasonable notice of the terms and a manifestation of assent. Lopez notes the judge's finding that "he was never informed that by signing the form he would be giving up his right to a jury trial." States, however, are precluded from "singling out arbitration provisions for suspect status," Doctor's Assocs., Inc., 517 U.S. at 687, and must view such provisions "upon the same footing as other contracts," id., quoting Scherk, 417 U.S. at 511. Courts may not "invalidate arbitration agreements under state laws applicable only to arbitration provisions." Doctor's Assocs., Inc., supra. Under ordinary contract principles, "a party's failure to read or

understand a contract provision does not free him from its obligations." Miller, 448 Mass. at 680. Therefore, we apply that rule to the arbitration contract here and conclude that Lopez is bound by the arbitration agreement.

We also discern no evidence of fraud by Stetson or anyone in his office. Fraud requires proof that one party made a materially false statement to induce action by the other party, and that the other party relied on the false statement to its detriment. Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991). According to the record, and the judge's findings, Lopez signed these documents on the day of surgery in a small group setting where a technician explained the risks and benefits of surgery to multiple patients, and Stetson invited patients to ask general questions.[2] Stetson would address patient-specific questions in private. During both the group session and the

---

[2] There was also testimony about the general practice of providing forms to patients. Patients received a "packet" of forms to "take home and read over" when scheduling surgery at the initial consultation. This packet included medical consent forms and an arbitration agreement. During the initial consultation, patients who had booked surgeries "would sit down with a technician and/or the optometrist [the] same day, [and] go over the risks associated" with the surgery. Patients would bring the forms with them on the day scheduled for surgery and would be provided another "packet" if they forgot to bring the forms. On the day of surgery, office staff "would again go over all the risks and have them initial the paperwork." The parties did not offer any argument, and the judge did not make any findings, relative to the general practice of patients taking forms home to review. Our decision does not turn on this testimony.

private session, a Spanish-speaking staff member was available to discuss any of the documents if necessary. Lopez testified, "They gave me papers and told me, sign here, sign here. It was a gentleman [not Stetson]." No evidence, including Lopez's own testimony, indicated that anyone misrepresented the nature of the arbitration agreement. In the absence of a material misrepresentation, there is no basis to conclude that fraud occurred.

For similar reasons, we conclude that the arbitration agreement was not invalid on the ground of unconscionability. Presenting a patient with a "stack of multiple forms" to review and sign before a medical procedure does not alone render a contract contained therein unconscionable. See Miller, 448 Mass. at 673, 680 (concluding separate arbitration agreement signed along with various other "necessary forms" by plaintiff on date of his father's admission to nursing home not unconscionable). The inquiry is more nuanced. "Historically, a contract was considered unconscionable if it was 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" Id. at 679, quoting Hume v. United States, 132 U.S. 406, 411 (1889). Unconscionability, both procedural and substantive, is evaluated "on a case by case basis," giving particular attention to "unfair surprise" and "oppressive" terms. Zapatha v. Dairy

Mart, Inc., 381 Mass. 284, 293 (1980).  Here, we discern neither unfair surprise nor oppressive terms.  In addition to the ample notice provided by the terms of the arbitration agreement previously discussed, the process used by Stetson minimized any risk of unfair surprise.  On the day of the surgery, Lopez had the opportunity to raise any questions about the packet, discuss questions with Stetson, and avail himself of the services of a Spanish-speaking interpreter if needed.  On appeal Lopez did not identify any dubious provision.  The arbitration agreement is brief and to the point -- establishing mandatory arbitration as the sole and exclusive means of settling all claims for medical malpractice.  The purpose and effect of the agreement are not unconscionable and are entirely consistent with State and Federal policies that "heavily" favor submitting disputes to binding arbitration.  Miller, supra at 680.

Finally, the record lacks any evidence of duress showing that Stetson caused Lopez to enter into the arbitration agreement "under the influence of such fear" that precluded the exercise of "free will and judgment" (citation omitted).  Avallone v. Elizabeth Arden Sales Corp., 344 Mass. 556, 561 (1962).  Rather than duress, the record shows an exercise of free will:  Lopez had time to review all documentation; he had access to a Spanish-speaking interpreter at Stetson's office; he had the opportunity to speak with Stetson in a group setting or

in private; he knew he could decline to sign; and he signed the arbitration agreement.  Thus, the arbitration agreement here was ultimately the product of "consent, not coercion," Volt Info. Sciences, Inc. v. Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 479 (1989), and must be rigorously enforced as agreed, see Archer, 490 Mass. at 355.

Conclusion.  The Superior Court judge's order denying Stetson's motion to compel arbitration is reversed, and the case is remanded for the entry of an order compelling arbitration and dismissing the complaint as to Stetson.

So ordered.